Dennis P. KING, Plaintiff,

v.

CAESAR RODNEY SCHOOL DISTRICT et al., Defendants.

Civ. A. No. 4607.

United States District Court, D. Delaware.

Aug. 26, 1974.

━━━━◆━━━━

Sheldon N. Sandler and Jacob Kreshtool of Bader, Dorsey & Kreshtool, Wilmington, Del., for plaintiff.

Roger Sanders of Prickett, Ward, Burt & Sanders, Wilmington, Del., for defendants.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

■■ ■■ Plaintiff Dennis P. King is a certified public school teacher whose tenure was terminated in April, 1973 by defendants, the Caesar Rodney School District; its Board of Education, individually and in their official capacities; and its Superintendent. Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 [1] and the fourteenth amendment to the United States Constitution seeking a declaratory judgment that his dismissal was invalid. He initially sought reinstatement, incidental equitable relief, and compensatory and punitive damages. A two-day trial to the Court was held, during which plaintiff withdrew his demand for compensatory and punitive damages. Jurisdiction is asserted pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202. Because plaintiff has withdrawn his demand for compensatory and punitive damages, the matter in controversy no longer "exceeds the sum or value of $10,000, exclusive of interest and costs," and jurisdiction is not conferred by 28 U.S.C. § 1331.[2] Jurisdiction is proper under the remaining statutory provisions asserted.

### Factual Background

Plaintiff was a teacher in the defendant school district from September, 1967, until his mid-term dismissal, which was effective April 10, 1973. At the time of dismissal, plaintiff had attained tenure and was employed by defendant Board of Education pursuant to a contract which extended to June 30, 1973. Plaintiff taught physical education and health at Caesar Rodney Junior High School. On February 21, 1973, while participating in a game called "stingball", which combines elements of kickball, dodge ball, and other playground games, plaintiff unintentionally injured one of his students. The parents of the student complained to the school administration, and defendant Neil Postlethwait, the District Superintendent, scheduled a special meeting of the School Board for the evening of March 6, 1973, to discuss the incident and other aspects of plaintiff's performance. In a letter dated March 1, 1973, Superintendent Postlethwait notified the plaintiff of the forthcoming Board meeting "for the purpose of discussing your teaching problems and determining whether or not you should continue in your teaching position", directed plain-

---

1. It has been held repeatedly by this Court that § 1983 does not create a cause of action against a public body such as a school district for injunctive, as well as monetary relief. Shellburne, Inc. v. New Castle County, 293 F.Supp. 237, 240–241 (D.Del.1968) ; Mathias v. New Castle County Vocational Technical School District, Civil Action No. 4073 (D.Del. September 22, 1971) ; Conway v. Alfred I. DuPont School District, 333 F.Supp. 1217, 1218 (D.Del.1971) ; Hayes v. Cape Henlopen School District, 341 F.Supp. 823 (D.Del.1972) ; cf. City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L. Ed.2d 109 (1973). However, this immunity from suit under § 1983 has not been asserted by the District here.

2. Defendants have not challenged plaintiff's assertion of § 1331 jurisdiction, but this Court has an independent responsibility to ascertain that jurisdiction exists before rendering decision. Mansfield, C & L. M. Ry. v. Swan, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884) ; Cameron v. Hodges, 127 U.S. 322, 8 S.Ct. 1154, 32 L.Ed. 132 (1888) ; Louisville & N. R. Co. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908) ; Wymard v. McCloskey & Co., 342 F.2d 495 (3rd Cir. 1965), cert. denied 382 U.S. 823, 86 S.Ct. 52, 15 L.Ed.2d 68 (1965) ; Rule 12 (h)(3), Federal Rules of Civil Procedure.

tiff to attend, and suspended him with pay. PX 1.[3]

Prior to the March 6 meeting, members of the Board received from the school administration a packet of documents, DX 4, concerning King's teaching performance spanning a period of four years. The packet was a selection, perhaps unrepresentative, of materials from King's personnel file, and much of the information contained therein reflects unfavorably on King's performance. Although King had access to all the materials in his personnel file, before the scheduled hearing he did not know which materials, if any, would be available to the Board. Nor, at the hearing itself, was plaintiff allowed to learn precisely what information from his file had been submitted to the Board.

At the outset of the March 6 meeting, defendant Postlethwait stated that the purpose of the meeting was "to provide the Board the opportunity to consider whether or not there is a just cause to terminate the services of Mr. Dennis King under Delaware Code, Title 14, Section 1420." DX 2A, p. 1. Larry Hutchins, a representative of the Delaware State Education Association who assisted plaintiff at the hearing, objected that there had been inadequate notice that the Board would consider any charges beyond the stingball incident, but after some discussion, the Board proceeded to consider a wide range of evidence relating to King's professional performance.

■ At the March 6 meeting, the Board first examined the stingball incident in detail. The father of the injured student expressed his concern that the plaintiff improperly conducted the game and that the plaintiff failed to

care for the student properly after the injury. Kenneth Roberts, the principal of Caesar Rodney Junior High School, also made statements about the nature of the game and the facts surrounding the February 21 incident. King then gave his version of these issues. Thereafter, Roberts made an extended review of the inadequacies, in his judgment, of King's professional performance, including, *inter alia*: (1) several incidents in which King "laid hands on" students; (2) student complaints about group discipline by King; (3) King's failure to supervise a detention period he had arranged for one child; (4) poor handling of parental complaints; (5) poor rapport with students; (6) failure to follow school policy regarding mid-day absences; (7) statements indicating an unenthusiastic attitude toward teaching and extracurricular activities; (8) irreverent comments on a sign-in sheet; (9) improper maintenance and security of the gym locker room; (10) the large number of grievances and complaints against the school administration raised by King. DX 2A, pp. 43–59. Superintendent Postlethwait called to the attention of the Board several negative evaluations found in King's personnel file. DX 2A, pp. 59–60. After a short period of discussion, it was decided that King would present a response to the several charges at a continuation of the hearing on the evening of March 8, at which time he would also answer further questions of the Board.[4]

At the March 8 meeting, Hutchins and King presented a detailed defense to virtually all of the charges, as the Board expected them to do. DX 2B, pp. 2–40. This defense criticized Roberts' supervisory performance, observed that favorable evaluations of King were not

---

3. The letter also stated that the stingball incident was "one of a series of questionable practices relating to your work as a classroom teacher" but did not specify any other questionable practices.

4. The transcript of the March 6 meeting shows that defendants expected plaintiff to explain himself and to answer questions con-

cerning his conduct. DX 2A, pp. 4–5, 18, 19, 28. Moreover, at trial, Board members testified that they would have regarded plaintiff's failure to attend the hearing on March 6–8 as insubordination. Under these conditions, plaintiff's presentation of his defense cannot constitute a waiver of any of his rights to procedural due process.

presented to the Board, and stressed that student complaints about King's performance referred to by Roberts were isolated, unrepresentative and, as far as the hearing was concerned, hearsay. King and Hutchins also emphasized King's achievements during the course of his teaching career. There followed an extensive colloquy during which the Board developed certain of the evidence in even greater detail. At the conclusion of this discussion, the Board and Postlethwait retired to executive session. After this recess, Postlethwait summarized the position of the school administration and stated, "Because of his disregard for the safety of his pupils and the poor quality of the instructional program which he maintains for his classes, I therefore recommend that his services be terminated as provided for under Section 1420 of the Delaware Code." DX 2B, p. 119. The Board voted 4–1 to accept this recommendation. Joshua West, the sole dissenting member, stated for the record:

> Due to the environment in which Mr. King works, I believe that it is probable that Mr. King has at times demonstrated poor judgment and that his behavior in the classroom has not always been conducive to a well-operated classroom, and that his behavior at times relative to administrative policy has not been of professional status; however, I do not believe that just cause has been established that is great enough to terminate Mr. King's services under Delaware Code, Title 14, Section 1420, as now constituted. DX 2B, p. 120.

In all, the two-day hearing lasted seven or eight hours and consumed 190 pages of transcript. Plaintiff and defendants agree that a mid-term dismissal is a serious matter, for a teacher so dismissed has little opportunity for other teaching employment. At trial the Board members testified that they wanted to obtain all relevant facts before rendering a decision. According to Earl Clinton, the Board Chairman, the Board members agreed with Postlethwait's opening statement of purpose: to determine whether there was "just cause" to terminate King's services. There is no evidence that any Board member had any malice towards the plaintiff. This Court finds, based on the hearing transcript and the testimony of the Board members in Court, that the Board attempted to discharge its obligation fairly and in good faith. The Board members testified that if the same facts were presented to them at a later hearing, they would vote the same way.

On March 9, 1973, Postlethwait sent King a formal notice of the Board's intention to terminate his services, effective April 10, 1973. Rather than avail himself of the formal termination hearing provided by Delaware law,[5] plaintiff filed suit in this Court on March 16, 1973.

Plaintiff contends that the Board reached, at the end of this preliminary meeting or hearing, a decision on the ultimate issue reserved under Delaware law for a subsequent statutory hearing. Plaintiff argues that having inquired into virtually every aspect of plaintiff's teaching career before the statutory hearing, the Board fatally prejudged his case and could not have given him the impartial hearing to which he was entitled under Delaware law and the United States Constitution. Defendants contend that this preliminary hearing was fair, that it was required by state law and by the teacher employment contract, that a procedurally adequate statutory hearing could subsequently have been provided had plaintiff requested one, and that, in any event, plaintiff waived his due process claim by failing to contest the Board action through the procedures established by state law.

### The Delaware Statutory Scheme

Plaintiff does not challenge the constitutionality of Delaware's statutory scheme for termination of a teacher's

---

5. See discussion of Delaware statutes, *infra*.

services. The statutes provide that a school board may terminate the services of a teacher during the school year on the grounds of immorality, misconduct in office, incompetency, disloyalty, neglect of duty, or willful and persistent insubordination. 14 Del.C. § 1420. A board desiring to dismiss a teacher shall give written notice of its intention to terminate stating the reasons for such termination at least 30 days prior to the effective date of dismissal. *Ibid.* A teacher receiving a notice of intention to terminate has the right, upon request made within 10 days, to a hearing before the Board of Education, 14 Del.C. § 1413. At any such hearing, the teacher is afforded a panoply of procedural rights. *Ibid.*[6] If the Board decides to dismiss the teacher, the teacher may obtain judicial review by the Superior Court in the county where the teacher was employed, but the teacher bears the burden of demonstrating that the Board's decision was not based upon "substantial evidence". 14 Del.C. § 1414; Board of Education, Laurel Special School District v. Schockley, 2 Storey 237, 52 Del. 237, 155 A.2d 323 (Sup. Ct.), reargument denied, 2 Storey 277, 52 Del. 277, 156 A.2d 214 (Sup.Ct.1959). If the decision of the court is favorable to the teacher, he is entitled to reinstatement and any salary lost as a result of suspension. 14 Del.C. § 1414.

### Waiver

Defendants claim that plaintiff consciously and knowingly failed to request a statutory termination hearing and therefore has waived the right to complain of the nature of the hearing that would have been afforded.[7] Defendants rely on this Court's decision in Hayes v. Cape Henlopen School District, 341 F. Supp. 823 (D.Del.1972), which held that a school employee who voluntarily failed to attend a hearing offered by the school board had waived the right to complain that no hearing had been provided. That case is plainly distinguishable, as the Court there indicated:

> It is axiomatic that an individual who voluntarily refuses to participate in a hearing offered by an administrative board waives his procedural due process rights to a hearing and is precluded from subsequently challenging the Board for failing to provide him with a hearing.[19]

19. This is not a case where the plaintiff has challenged specific inadequacies in the hearing provided, e. g., biased decision maker, no cross examination, etc. In such a case, failure to attend the allegedly inadequate hearing would presumably not constitute a waiver. 341 F.Supp. at 834.

The Supreme Court has repeatedly stated that waiver of a constitutional right should not lightly be inferred, and that courts should indulge every reasonable presumption against waiver. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); D. H. Overmyer Co. v. Frick Co., 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972); Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); Ohio Bell Tel. Co. v. Public Utilities Commission, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937); Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177 (1937). Plaintiff has insisted ever since the filing of this suit, at the latest, that the Board improperly

6. The teacher may choose whether the proceedings be public or private, may be represented by counsel, may subpoena witnesses, and may cross-examine witnesses. Furthermore, all testimony at the hearing must be under oath, must be confined to the reasons stated in the written notice of intention to terminate service, and must be recorded stenographically at the Board's expense. Finally, the school board must advise the teacher of its decision within 15 days and, if the decision is in favor of the teacher, must

fully reinstate him with back pay for any salary lost as a result of suspension.

7. Defendants have not asked this Court to stay its hand pending exhaustion by plaintiff of his state administrative and judicial remedies. Rather, defendants' position is that having elected to file the instant suit instead of requesting a statutory hearing within 10 days after issuance of the notice of intention to terminate, 14 Del.C. § 1413, plaintiff is now precluded from pursuing any state remedies.

prejudged his case.[8] If plaintiff's legal theory is correct, he could not have been given a fair termination hearing because of the Board's pre-hearing familiarity with all of the evidence. The Court cannot read plaintiff's actions as a waiver of his constitutional claim to an impartial hearing panel and it must, therefore, decide the issue on its merits.

The remaining cases cited by defendants do not compel a different result. In Conway v. Alfred I. DuPont School District, 333 F.Supp. 1217 (D.Del.1971), Judge Steel found that the plaintiff did not press, either before or during the litigation, the allegation in her complaint that the defendants' refusal to provide a termination hearing deprived her of due process; accordingly, Judge Steel was not required to rule on that claim. In Beckwith v. School Administrative District No. 2, 243 A.2d 62 (Me. 1968), and Cary v. School District of Lower Merion, 362 Pa. 310, 66 A.2d 762 (1949), the courts determined that proper requests for termination hearings had not been made under the applicable state statutes and, therefore, that no hearings were required. Both decisions rested on statutory construction, and neither court considered the requirements of procedural due process.

### Impartiality

■■ The due process clause of the Fourteenth Amendment guarantees that where a state agency is required to provide a hearing before imposing a detriment on an individual, the hearing panel must be impartial.[9] Goldberg v. Kelly, 397 U.S. 254, 271, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1970); Wasson v. Trowbridge, 382 F.2d 807, 813 (2nd Cir.

1967); Winnick v. Manning, 460 F.2d 545 (2nd Cir. 1972). "Any other collateral procedural guarantees are largely without meaning if the deciding tribunal has in some way adversely prejudged the merits of the case." Simard v. Board of Education of the Town of Groton, 473 F.2d 988, 993 (2nd Cir. 1973). There is no question that the meetings of March 6 and 8 were not the termination hearing required by law.[10] The question before the Court, therefore, is not whether Dennis King was entitled to an impartial tribunal, but whether the Board so thoroughly investigated the facts of King's case before the termination hearing that it could not have conducted the impartial hearing to which King was entitled.

■ The extent of prior official contact with the facts of a case that can constitute impermissible bias is as yet unsettled in the law. In Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L. Ed.2d 488 (1973), this issue was presented to, but not decided by the Supreme Court. The Court stated:

The extent to which an administrative agency may investigate and act upon the material facts of a case and then, consistent with due process, sit as an adjudicative body to determine those facts finally has occasioned some divergence of views among federal courts. Compare Amos Treat & Co. v. SEC, 113 U.S.App.D.C. 100, 306 F.2d 260 (1962), and Trans World Airlines v. CAB, 102 U.S.App.D.C. 391, 254 F.2d 90 (1958), with Pangburn v. CAB, 311 F.2d 349 (CA 1, 1962). See also Mack v. Florida State Board of Dentistry, 296 F.Supp. 1259 (S.D.Fla.1969). We have no occasion

---

**8.** Certain statements made by Larry Hutchins, plaintiff's representative, at the March 6 meeting also appear to have raised this claim. DX 2A, p. 4.

**9.** That plaintiff, a tenured teacher with a contract extending until June 30, 1973, had a right to a termination hearing not only under state statute, but also stemming from the Fourteenth Amendment, is beyond question here. Board of Regents v. Roth, 408

U.S. 564, 576–578, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

**10.** Plainly, the two-day proceeding was not the hearing required by 14 Del.C. § 1413. For example, it was not preceded by a notice of intention to terminate; the plaintiff did not have an opportunity to subpoena witnesses; testimony before the Board was not under oath; testimony was not confined to any prior written notice given to the plaintiff. See note 6, *supra.*

to pass upon this issue here in view of our disposition of the present case. 411 U.S. at 579, n. 17, 93 S.Ct. at 1698.

The *Amos Treat* and *Trans World Airlines* decisions cited by the Supreme Court stand for the proposition that, in the interest of avoiding bias, those members of an agency who are to render an adjudicative decision in a case should not previously have been involved in investigation or advocacy concerning the underlying facts. In Mack v. Florida State Board of Dentistry, *supra,* the court found, *inter alia,* that where the hearing board was kept "well apprised" of the facts of an investigation as they developed, it could not fairly render a decision. 296 F.Supp. at 1262–1263. On the other hand, after an extensive review of previous decisions, the court in Pangburn v. CAB, *supra,* stated, ". . . we cannot say that the mere fact that a tribunal has had contact with a particular factual complex in a prior hearing, or indeed has taken a public position on the facts, is enough to place that tribunal under a constitutional inhibition to pass upon the facts in a subsequent hearing." 311 F.2d at 358.

 The recent decisions on this problem find that a substantial pre-hearing familiarity by the decision-makers with the facts of a case disqualifies them from ruling on those facts, and this appears to be the better view. In a somewhat different context, the Court of Appeals for this Circuit recently indicated that involvement by an appellate tribunal in an investigation might disqualify both inferior and appellate tribunals from ruling on related factual issues. Helfant v. Kugler, 500 F.2d 1188 (3rd Cir. July 8, 1974). In *Simard, Winnick,* and *Wasson,* supra, the Court of Appeals for the Second Circuit has taken the position that prior official contact with a case, through observation, investigation, or prehearing decisions, can create impermissible bias. Similarly, in Pregent v. New Hampshire Department of Employment Security, 361 F.Supp. 782 (D. N.H.1973), a three-judge court stated,

"If the Chairman of the Appeal Tribunal did have prior involvement with a claimant's case, either in the investigatory, fact-finding, or decision-making state, we would regard such prior official contact as disqualifying and as violative of due process." 361 F.Supp. at 797.

 In the present case, the Board of Education not only examined virtually all of the relevant evidence concerning plaintiff's teaching performance, but it also weighed that evidence and reached the conclusion that there was "just cause" for dismissal. Additionally, the Board members testified that unless new evidence were presented at a subsequent termination hearing, they would vote the same way. Thus, the Board had concluded its investigative and deliberative task before the termination hearing required by Delaware law and the due process clause, and plaintiff was confronted with a fait accompli. Under these circumstances, the specific procedural guarantees of the statutory termination hearing were rendered meaningless. This Court does not need to draw the line between permissible preliminary scrutiny and impermissible prejudgment in order to find a constitutional violation on the facts of this case.

That the defendants violated the right of the plaintiff to procedural due process in this case is unfortunate, for it is clear that the members of the Board intended only to inquire fully into the facts of the case before taking *any* action that might result in termination of King's employment contract in mid-year. Under the Delaware statutory scheme, the proper time for a plenary hearing on the facts is the termination hearing provided by 14 Del.C. § 1413, not a preliminary session conducted prior to issuance of the notice of intention to terminate. In the event the school administration wishes to terminate the employment of a teacher during the school year, it may specify statutory reasons for the proposed dismissal and submit to the Board of Education a recommendation that the Board issue a notice of intention to ter-

minate. The Board, without further inquiry beyond a determination that the specified reasons for dismissal are not frivolous on their face, should then issue the notice of intention to terminate and designate therein the reasons specified by the administration. Within 10 days after receipt of the notice of intention to terminate, the teacher may request a hearing, as provided by 14 Del. C. § 1413. Following such a hearing, should the Board determine that some or all of the specified reasons are factually correct and are sufficient for dismissal, it may properly find "just cause" for dismissal.

Defendants assert incorrectly that the collective bargaining agreement between the Board of Education and the Caesar Rodney District Education Association, DX 5, requires a different procedure. Article XVI of that agreement provides the following with respect to "fair dismissal procedure":

A. The Board agrees that no teacher will be dismissed without just cause.

B. All teachers will be guaranteed the full constitutional protection of due process.

Similarly, Article III provides in relevant part:

B. Nothing contained herein shall be construed to deny or restrict to any teacher such rights as he may have under Delaware School Laws or other applicable laws and regulations.

C. No teacher shall be disciplined, reprimanded, reduced in rank or compensation or deprived of any professional advantage without just cause.

The agreement requires that a finding of "just cause" precede dismissal or other discipline ultimately meted out by the Board, but nowhere requires such a finding before issuance of a notice of intention to terminate. The notice of intention to terminate should be the prologue, not the epilogue, to the Board's decision-making process.

*Conclusion*

Having found that the procedure followed by defendants in dismissing plaintiff did not comport with due process of law, this Court will order plaintiff's reinstatement and incidental equitable relief.

Submit order.