**Dennis P. KING, Plaintiff,**

v.

**CAESAR RODNEY SCHOOL DISTRICT
et al., Defendants.**

**Civ. A. No. 4607.**

United States District Court,
D. Delaware.

June 26, 1975.

Sheldon N. Sandler, of Bader, Dorsey & Kreshtool, Wilmington, Del., for plaintiff.

Roger P. Sanders, of Prickett, Ward, Burt & Sanders, Wilmington, Del., for defendants.

## OPINION AND ORDER ON ATTORNEYS' FEES

WRIGHT, Senior District Judge.

After trial without a jury, this Court held that defendants dismissed the plaintiff, a tenured public school teacher, at mid-year in a manner inconsistent with due process of law. 380 F.Supp. 1112

(D.C.1974). The Court ordered reinstatement of plaintiff and certain incidental equitable relief. Plaintiff now seeks an award of attorneys' fees. Defendants oppose an award on three distinct grounds: (1) that the eleventh amendment bars such an award against the defendants; (2) that the plaintiff's request does not fall within any of the accepted rationales for the award of attorneys' fees and, as a matter of discretion, is inappropriate; and (3) that in any event, plaintiff can only recover to the extent of his personal obligation to pay his attorneys.

### Eleventh Amendment Immunity

The eleventh amendment culminated the general antagonism to the Supreme Court's decision in Chisholm v. Georgia, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793), that a state was liable to suit by a citizen of another state or of a foreign country.[1] The amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

While the amendment does not by its terms provide immunity for a state from suit brought in federal court by its own citizens, the Supreme Court has repeatedly found such immunity in the amendment by implication. Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 771 (1973), and cases there cited. Moreover, the Supreme Court has held that even though a state is not named as a defendant, where the action "is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). In Edelman v. Jordan, *supra*, the Court held further that, as a general proposition,[2] a state is immune under the eleventh amendment from actions to recover accrued monetary damages from its treasury, even though the recovery has some characteristics of equitable restitution. Compare, Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

To establish their eleventh amendment claim, therefore, defendants contend first, that the present action is in reality an action against the State of Delaware, and second, that any award of attorneys' fees would be akin to a proscribed retroactive award of monetary damages against the State.

 With respect to defendants' first contention, it is settled that a governmental agency can claim a state's immunity under the eleventh amendment only if the state is the "real party in interest" in the proceeding, and the determination is a matter of federal law. Hopkins v. Clemson Agricultural College, 221 U.S. 636, 31 S.Ct. 654, 55 L.Ed. 890 (1911); Urbano v. Board of Managers, 415 F.2d 247 (3rd Cir. 1969); Gordenstein v. University of Delaware, 381 F.Supp. 718 (D.Del.1974); NA–JA Construction Corp. v. Roberts, 259 F.Supp. 895 (D.Del.1966). In determining whether the defendant governmental agency is, in fact, the alter ego of the state, state law defining the relationship between the agency and the state should be considered as well as some or all of the following factors: whether, in the event plaintiff prevails, the judgment

---

1. A succinct history of the eleventh amendment is contained in Justice Rehnquist's opinion for the majority in Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 771 (1974).

2. The majority noted, "As in most areas of the law, the difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714] will not in many instances be that between day and night." 415 U.S. at 667, 94 S.Ct. at 1357.

will have to be paid out of the state treasury; whether the agency is performing a governmental or proprietary function; whether it has been separately incorporated; whether it has autonomy over its operations; whether it has the power to sue and be sued and to enter into contracts; whether its property is immune from state taxation, and whether the state has immunized itself from responsibility for the agency's operations. Urbano v. Board of Managers, 415 F.2d at 251. Cf., Skehan v. Board of Trustees, 501 F.2d 31, 41–43 (3rd Cir. 1974), judgment vacated, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975).

Under Delaware law, the Caesar Rodney School District is a "clearly defined geographic subdivision of the State organized for the purpose of administering public education in that area." 14 Del.C. § 1002(1). The school board is elected by voters in the district, 14 Del.C. § 1051, and, in accordance with the policies, rules, and regulations of the State Board of Education, determines the educational policies for the district. 14 Del.C. § 1049. The local school board has control, management, and custody of the property and funds of the district. 14 Del.C. § 1056. Although every school district receives substantial state appropriations for capital and operating expenditures, each school district also has the power to levy and collect additional taxes for school purposes following a referendum of the voters in the district.[3] 14 Del.C. §§ 1902–03. Moreover, the school district hires teachers and staff without the necessity of prior state approval, 14 Del.C. §§ 1049, 1091 et seq., and the school board is the agency which can terminate the services of a teacher. 14 Del.C. § 1401 et seq. Appeal by a teacher from dismissal is not to any state administrative agency but rather directly to the Superior Court. 14 Del. C. § 1414.

In view of this statutory framework, it is plain that, although the local school board lacks complete autonomy over all of its operations, plaintiff's action for reinstatement and incidental relief was properly addressed to officers of the Caesar Rodney School District and not to the State Board of Education or the State of Delaware. Defendants alone have the power to reinstate the plaintiff, and the present litigation cannot be characterized as a disguised action against the State.[4] Cf., Gordenstein v. University of Delaware, 381 F. Supp. at 721–22; NA–JA Construction Corp. v. Roberts, 259 F.Supp. at 896–98.

Furthermore, defendants have admitted that any award of attorneys' fees in this case would not be satisfied by the state treasury but by insurance which the school board carries.[5] In addition, defendants can point to no Delaware case authority[6] for their claim to

---

3. For example, the basic salary for all teachers is mandated by statute and funded by the State, but local districts are authorized to supplement teachers' salaries from local funds. 14 Del.C. §§ 1304–05.

4. Local school districts in Delaware, unlike state officers, departments, boards, agencies, commissions, or instrumentalities, are empowered to employ their own attorney for all legal services except bond issues. 29 Del.C. § 2515. It is noteworthy that the defendants in this action, rather than relying upon the Delaware Attorney General, retained private counsel.

5. The Court notes that the policy of Delaware is that the defense of sovereign immunity is waived and cannot be asserted as to any risk or loss covered by the state insur-

ance program. 18 Del.C. § 6511. Although insurance coverage for school districts is authorized pursuant to the state insurance program, the record does not indicate whether the insurance held by the Caesar Rodney District was obtained through the state program.

6. Defendants rely on Slovin v. Gauger, 193 A.2d 452, 465 (Del.Super.1963), aff'd. on other grounds, 200 A.2d 565 (Del.1964), as authority for the sovereign immunity of local school districts under Delaware law. In that case, the Superior Court judge determined that irrespective of any immunity defense raised by defendants, plaintiffs were entitled to no relief on the merits. Recognizing that no decision on the sovereignty issue was required, the court discussed the is-

sovereign immunity. In short, it cannot fairly be concluded that defendants constitute the alter ego of the State of Delaware, and defendants' claim to eleventh amendment immunity is without merit.[7]

Because the defendants are not entitled to eleventh amendment immunity, their second contention, that an award of attorneys' fees would be legally equivalent to proscribed retroactive damages, need not be resolved here. The Court notes in passing, however, that even if the *Edelman* holding forecloses the award of attorneys' fees incurred in the recovery of accrued monetary damages, Skehan v. Board of Trustees, 501 F.2d at 42 (dictum), it is questionable that attorneys' fees in an action seeking only reinstatement and other prospective relief could properly be characterized as proscribed "retroactive" damages. Cf., Downs v. Department of Public Welfare, 65 F.R.D. 557, 561 (E.D.Pa. 1974).[8]

### Propriety of an Award

Historically, American courts have ordinarily refused to award attorneys' fees to successful civil litigants.[9] Fleischmann Distilling Corp. v. Maier

Brewing Co., 386 U.S. 714, 717–18, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). The two common categories of exceptions to this general rule recognized by federal courts have been cases where recovery of attorneys' fees by the prevailing party is authorized or required by statute,[10] and cases where the award has been deemed proper under the courts' equitable power. Hall v. Cole, 412 U.S. 1, 4–5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). Since there is no statutory authorization for the award of counsel fees to prevailing § 1983 plaintiffs, plaintiff bases his request squarely upon this Court's equitable jurisdiction. Until recently, courts using the equitable power to shift attorneys' fees relied upon one or more of the following rationales: bad faith or obdurate behavior by the defendant, creation or preservation of a common fund or common benefit by the plaintiff, and the private attorney general theory. Goode v. Rizzo, 506 F.2d 542, 549 (3rd Cir. 1974). In Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), however, the Supreme Court held that the equitable jurisdiction of federal courts does not encompass authority to

sue but expressly refrained from deciding it. In its discussion, however, the court indicated a preliminary conclusion that sovereign immunity is available to school districts as a general proposition, but that the immunity is waived where liability insurance exists. 193 A.2d at 465. In affirming on the merits, the Delaware Supreme Court did not discuss the sovereign immunity question. Moreover, it appears to be the policy of Delaware courts to construe legislation liberally as a waiver of sovereign immunity. Varity Builders, Inc. v. Polikoff, 305 A.2d 618 (Del.1973).

7. A determination that a local school district is not immune from suit under the eleventh amendment is not inconsistent with the principle that the action of local school districts is "state action" for purposes of the fourteenth amendment. Edelman v. Jordan, 415 U.S. at 667, n. 12, 94 S.Ct. 1347; Gordenstein v. University of Delaware, 381 F.Supp. at 722 n. 23. See, Evans v. Buchanan 379 F.Supp. 1218, 1221–22. (D.Del.1974).

8. In Wood v. Strickland, 420 U.S. 308, 95 S. Ct. 992, 43 L.Ed.2d 214 (1975), the Supreme Court held that school board mem-

bers have a qualified immunity from liability for damages under 42 U.S.C. § 1983. Because it is agreed that insurance held by the Caesar Rodney School District would satisfy any award of attorneys' fees in this case, the Court does not reach the issues of whether Wood v. Strickland creates an immunity from attorneys' fees and whether the holding applies to acts taken in the board members' individual as well as official capacities.

9. "The exclusion of counsel fees from recoverable costs rests on nothing more than an estimate—a plausible but unverifiable guess—that more litigants will be deterred by doubling the costs in lawyers' fees if they lose than will be encouraged by the prospect that the lawsuit will cost them nothing if they win." Dawson, Lawyers and Involuntary Clients In Public Interest Litigation, 88 Harv.L.Rev. 849, n. 1 (1975).

10. See, Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 260–262, 95 S. Ct. 1612, 1623–1624, 44 L.Ed.2d 141, ns. 33–35 (1975).

award counsel fees to private attorneys general.[11] Accordingly, plaintiff may not gain a recovery under the private attorney general theory. The Supreme Court in *Alyeska* reaffirmed the equitable authority to shift counsel fees under the bad faith and common benefit theories, and plaintiff's arguments on these two grounds deserve attention.

 Plaintiff would be entitled to counsel fees if he could establish that the defendants acted "in bad faith, vexatiously, wantonly, or for oppressive reasons . . .." F. D. Rich Co. v. Industrial Lumber Co., 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). The purpose of fee shifting in such circumstances is deterrent and punitive. Hall v. Cole, 412 U.S. at 5, 93 S.Ct. 1943. There is no basis, however, for an assertion that defendants were guilty of bad faith in dismissing the plaintiff. On the contrary, this Court's opinion on the merits specifically found that the Board attempted to discharge its obligation fairly and in good faith, 380 F.Supp. at 1116, and that the board members violated plaintiff's due process rights only out of a misguided intention to inquire fully into the facts of the case before taking any action that might result in plaintiff's dismissal at mid-year. 380 F.Supp. at 1119. While King's dismissal was procedurally defective, it was not the product of bad faith. Contrast, McEntaggart v. Cataldo, 451 F.2d 1109 (refusal to give a statement of reasons for dismissal); Sims v. Amos, 340 F. Supp. 691 (M.D.Ala.1972), aff'd., 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215

(1972) (unyielding refusal of state legislature to reapportion despite mandate of State and Federal Constitutions).

Nor can defendants' conduct in litigating this matter be characterized as obdurate behavior. Defendants did not advance frivolous arguments in this proceeding or otherwise attempt to forestall a prompt adjudication. As this Court has previously noted, the central issue in this case—the extent of prior contact by a tribunal with the facts of a case that constitutes impermissible bias—is complex and unsettled in the law. 380 F.Supp. at 1118–19. See also, Withrow v. Larkin, 421 U.S. 35, 49–52, 95 S.Ct. 1456, 1466, 43 L.Ed.2d 712 (1975); Gibson v. Berryhill, 411 U.S. 564, 579, n. 17, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). Hence, vigorous litigation by defendants in this case did not imply improper motivation, and this was not a case where a defendant, heedless of well-established legal principles, insisted on depriving a plaintiff of his legal due before or during litigation.[12]

The common benefit rationale, which plaintiff urges as an alternative ground for the award of counsel fees, developed from the "historic power of equity to permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund or property itself or directly from other parties enjoying the benefit." Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. at 257, 95 S.Ct. at 1621. See, Sprague v. Ticonic National

---

11. The Supreme Court recently described the private attorney general theory as "a rationale for fee shifting based on the premise that the expense of litigation may often be a formidable if not insurmountable obstacle to the private litigation necessary to enforce important public policies." F. D. Rich Co. v. Industrial Lumber Co., 417 U.S. 116, 130, 94 S.Ct. 2157, 2165 (1974).

12. By way of contrast, see, Vaughan v. Atkinson, 369 U.S. 527, 530–31, 82 S.Ct. 997, 999, 8 L.Ed.2d 88 (1962) (recalcitrance of employer to investigate or reply to claim

forced injured seaman "to hire a lawyer and go to court to get what was plainly owed to him under laws that are centuries old."); Clark v. Board of Education, 369 F.2d 661, 671 (8th Cir. 1966) (recalcitrant state officials may not "force unwilling victims of illegal discrimination to bear the constant and crushing expense of enforcing their constitutionally accorded rights"); Bell v. School Board, 321 F.2d 494, 500 (4th Cir. 1963) (a long continued pattern of evasion and obstruction of plaintiffs' right to school desegregation).

Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L. Ed. 1184 (1939); Central Railroad and Banking Co. v. Pettus, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 115 (1885); Trustees v. Greenough, 105 U.S. 527, 26 L. Ed. 1157 (1881). Proceeding upon the same unjust enrichment theory that animated the earlier cases,[13] the Supreme Court in two recent cases authorized an equitable award of attorneys' fees where no common fund was created or preserved, but where nonmonetary benefits were bestowed through successful litigation upon an ascertainable class. In Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), minority shareholders established a violation of § 14 of the Securities Exchange Act of 1934 and protected the right of "fair and informed corporate suffrage" for all shareholders. In Hall v. Cole, *supra,* a dissident union member vindicated the right of free speech guaranteed by § 101 of the Labor-Management Reporting and Disclosure Act of 1959 and helped preserve "union democracy" for all other union members. In both cases, shifting counsel fees to the defendant institutions allowed the Court to spread the costs of litigation among the class benefitting from the successful prosecution of the action: shareholders in *Mills,* 396

U.S. at 397, 90 S.Ct. 616, and union members in *Hall,* 412 U.S. at 8–9, 93 S. Ct. 1943. See, Dawson, Lawyers and Involuntary Clients in Public Interest Litigation, 88 Harv.L.Rev. 849 (1975); Note, Reimbursement for Attorneys' Fees from the Beneficiaries of Public Interest Litigation, 58 Minn.L.Rev. 933 (1974).

�as In the instant case, plaintiff established that the defendant school board, by conducting a plenary review of all evidence and by determining that there was "just cause" for dismissal prior to the termination hearing guaranteed plaintiff by Delaware law, deprived plaintiff of his right to due process. The prime beneficiaries of plaintiff's efforts are public school teachers in the Caesar Rodney School District and, in a larger sense, throughout Delaware. Shifting plaintiff's counsel fees to the defendants, however, would not meaningfully spread the costs among the teachers,[14] but rather would tax the Caesar Rodney School District body politic.[15] Plaintiff urges that in clarifying the obligation of school boards to provide fair termination hearings and thereby promoting the interest of labor harmony, plaintiff has bestowed a benefit on the defendant school board and on all

13. In Mills v. Electric Auto-Lite Co., the Court stated, "But regardless of the relief granted, private stockholders' actions of this sort 'involve corporate therapeutics,' and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute. To award attorneys' fees in such a suit to a plaintiff who has succeeded in establishing a cause of action is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefited from them and that would have had to pay them had it brought the suit." 396 U.S. 375, 396–97, 90 S.Ct. 616, 628 (1970). See also, Hall v. Cole, 412 U.S. at 8–9, 93 S.Ct. 1943.

14. Plaintiff suggests that if the school board must pay plaintiff's counsel fees, less money will be available to pay the teachers' salaries and, therefore, the costs of an award will, to an extent, be passed on to the teachers. Were this view accepted, any expense whatever incurred by the school board could be

considered a cost spread among the teachers. The common benefit doctrine does not embody so attenuated a notion of fee-spreading. Moreover, counsel for plaintiff informed the Court that, in the event the Court does not award his fees, he expects to be compensated by the Dushane Fund, a litigation fund associated with the National Education Association. The Delaware State Education Association, an affiliate of the National Education Association, is the collective bargaining representative of the teachers in the Caesar Rodney School District and in several other Delaware school districts. Thus, leaving attorney expenses where they lie may in this case approximate spreading the costs among the teacher-beneficiaries far better than assessing the defendants.

15. Because the school district carries insurance, the district taxpayers presumably would not bear the costs directly but indirectly, in the form of higher premiums.

other Delaware school boards. Vindication of the fourteenth amendment right to procedural due process plainly confers a public benefit,[16] but benefits to the general public do not alone justify an equitable award of attorneys' fees. *Alyeska,* 421 U.S. at 263–271, 95 S.Ct. 1612. This Court is not persuaded that any specialized benefits have been conferred upon the defendant school board that amount to "common benefits" shared with the plaintiff under the reasoning of *Mills* and *Hall.* It is not clear that plaintiff has vindicated any rights of school boards. Nor can it be said that refusal to require the defendants to bear plaintiff's litigation expenses would unjustly enrich the school board at plaintiff's expense.[17] In these circumstances, to shift attorneys' fees to the defendants simply because they had been taught a "judicial lesson"[18] would cut athwart the general American rule of attorneys' fees.

To be sure, Justice Marshall's observation that there is no bright line distinguishing between "common benefit", compensable under established doctrine, and "public benefit", for which attorneys' fees may not be awarded under *Alyeska,* is manifestly correct. *Alyeska,* 421 U.S. at 277–278, 95 S.Ct. at 1631 (dissenting opinion). But it would seem that, at a minimum, for a case properly to fall within the common benefit doctrine, shifting the plaintiff's attorneys' fees to the defendant must place the costs on a ·class that demonstrably benefits from the litigation.[19] Because plaintiff has not established that the defendants are appropriate parties to spread the burden of counsel fees among the beneficiaries of this litigation, the common benefit rationale does not justify fee-shifting in this case.

Accordingly, plaintiff's request for attorneys' fees will be denied.

---

16. In disapproving the reasons advanced by a district court for refusing an award of counsel fees, the Court of Appeals for the Third Circuit recently noted that litigation redressing any violations of procedural due process serves an important interest of the public "in having its state-related institutions act in compliance with the fourteenth amendment." Skehan v. Board of Trustees, 501 F.2d 31, 44 (1974). The Supreme Court vacated judgment for, *inter alia,* reconsideration in light of *Alyeska,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975), evidently because the quoted rationale for the award of attorneys' fees is subsumed in the private attorney general rationale.

17. See note 13, *supra.*

18. Plaintiff's Letter Memorandum, May 22, 1975, at 5.

19. Two cases relied upon by plaintiff are not inapposite. In Brewer v. School Board of Norfolk, 456 F.2d 943 (4th Cir. 1972), cert. denied, 409 U.S. 892, 93 S.Ct. 109, 34 L.Ed. 2d 149 (1972), a school desegregation case, plaintiffs secured "for the students of this school system . . . a right [free transportation] of direct *pecuniary* benefit for all students assigned to schools without their neighborhood . . .." 456 F.2d at 951. The benefit thus gained was enjoyed by all students whose transportation would be required to bring the school district into compliance with the fourteenth amendment. It was appropriate, therefore, that the expense of this general educational program be borne by the taxpayers of the school district, who presumably benefit from all educational programs.

In McLaurin v. Columbia Municipal Separate School District, 478 F.2d 348 (5th Cir. 1973), an action brought by black school teachers alleging discriminatory dismissals in violation of a court order, the courts simply remanded the case to the district court for a determination whether an award of attorneys' fees was proper under *Brewer, supra,* or under the obdurate behavior rationale. 478 F.2d at 355. Thus neither case holds that the common benefit rationale authorizes shifting attorneys' fees to a defendant who will not spread the cost among the common beneficiaries.