**DELAWARE DEPARTMENT OF HEALTH AND SOCIAL SERVICES, DIVISION FOR the VISUALLY IMPAIRED, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF EDUCATION and the Secretary of the United States Department of Education, Defendants,**

v.

**Robert ALBANESE, Defendant-Intervenor.**

**Civ. A. No. 83–57–WKS.**

United States District Court, D. Delaware.

Aug. 14, 1984.

---

Matthew J. Lynch, Jr., Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for plaintiff.

Joseph J. Farnan, Jr., U.S. Atty., Sue L. Robinson, Asst. U.S. Atty., Wilmington, Del., Lucinda Stewart, U.S. Dept. of Educ., Washington, D.C., for defendants.

Jacob Kreshtool, Wilmington, Del., Kenneth Kreshtool, Philadelphia, Pa., for defendant-intervenor.

## OPINION

STAPLETON, Chief Judge:

This case arises under the Randolph-Sheppard Act ("the Act"), 20 U.S.C. § 107, *et seq.*, as amended 1974, which authorizes a cooperative federal/state scheme for licensing, training, and placing qualified blind persons in vending facilities on federal and other property. The federal agency charged with administering this statute is the defendant, United States Department of Education. Section 107(b) of the Act calls for the Department of Education to designate a state licensing agency to administer the program in each state. Although licensees participating in the program receive a variety of supportive services from the state, they are neither state nor federal employees, but rather, support themselves from the proceeds of their vending operations. Federal funding covers part of the state expense incurred in

administering the Act. These monies, however, come from the state's annual allotment under Title I of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, rather than grants appropriated specifically under the Randolph-Sheppard Act.

## I. FACTS

The division of the Visually Impaired ("D.V.I.") of the Delaware Department of Health and Social Services has been designated to administer the Act in Delaware. In August of 1979, a vending position within the Delaware program became available at the Paramount Poultry Company. Two blind persons, Kenneth Rolph and Robert Albanese, applied for the position. Mr. Albanese was already licensed at another D.V.I. vending facility, but sought the Paramount Poultry location because it was much more lucrative. The position was awarded to Mr. Rolph, who began operating the contested facility on October 1, 1979.

Mr. Albanese appealed this decision through the grievance procedures established by D.V.I. regulations on the ground that he was the "most senior qualified applicant," and, therefore, entitled to the position under D.V.I. regulations. His grievance was denied at the first two levels of appeal. The third step of the grievance procedure provided for an evidentiary hearing. Following a full evidentiary hearing on the matter, the hearing officer decided on February 25, 1981 that Mr. Albanese should have received the contested position and that some of his attorney's fees should be paid by D.V.I. Accordingly, on April 1, 1981, Mr. Albanese took over the vending location from Mr. Rolph.

Dissatisfied with this result, Mr. Albanese filed a grievance with the United States Department of Education pursuant to D.V.I. rules and 20 U.S.C. §§ 107d–1 and 107d–2, arguing that he was entitled to monetary damages in the nature of back pay and all of his attorney's fees. The D.V.I. asserted that there was no statutory or regulatory authority for such an award against D.V.I., and that, in any event, the State's immunity from suit would bar such an award. The Department of Education convened an arbitration panel to consider Mr. Albanese's grievance, and, in an opinion dated November 24, 1982, the panel awarded compensatory damages and attorney's fees against D.V.I. The damages were calculated on the basis of the difference in earnings at the two vending locations over the period that Albanese was wrongfully denied the contested position, October 1, 1979 through March 31, 1981. The State was also directed to pay for all attorney's fees incurred by Mr. Albanese up to and including the date of the panel's decision.

The arbitration panel rejected the State's position with regard to its lack of authority to award damages, asserting instead that arbitrators in the labor/management field are recognized to have general authority to award monetary damages for contract violations even though the contract itself does not specifically provide for such damages. The panel also found the doctrine of sovereign immunity to be inapplicable to Randolph-Sheppard Act arbitration proceedings since such proceedings do not involve the established judicial system. In addition, the panel found that by participating in the program and accepted federal funding, the State waived any objection it might have had with respect to the imposition of damages. Finally, the panel relied on the arbitration decision rendered in the case of *Moffitt v. Tennessee Department of Human Resources* for the proposition that damages are an appropriate remedy under the Act.

In accordance with 20 U.S.C. § 107d–2(a), on January 6, 1983 the arbitration panel's decision became "final agency action" within the meaning of the review provisions of the Administrative Procedure Act, 5 U.S.C. § 706. On February 3, 1983, D.V.I. brought this suit against the Department of Education challenging the decision of the arbitration panel. The Department of Education answered the complaint by agreeing with the plaintiff's contention that the arbitration panel had no authority

to award damages against D.V.I. On November 2, 1983 Mr. Albanese moved for and was granted leave to intervene as a defendant in this action.

█ Currently before the Court are the cross motions for summary judgment of the plaintiff, D.V.I., and defendant Albanese. The federal defendant filed briefs and presented oral argument in support of D.V.I.'s motion for summary judgment.[1] The parties are in agreement that the material facts are not in dispute and that the case should be decided on the present record.

## II. SCOPE OF JUDICIAL REVIEW

The arbitration decision having become "final agency action," the scope of judicial review is governed by § 706 of the Administrative Procedure Act, which provides in pertinent part that "[t]he reviewing court shall—

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

The plaintiff, D.V.I., urges that the decision of the arbitration panel be set aside as arbitrary and capricious, contrary to law, contrary to constitutional right and immunity and in excess of the panel's statutory authority.

## III. RETROACTIVE DAMAGES

█ The principal issue in this case is whether an arbitration panel convened pursuant to the Randolph-Sheppard Act is empowered to grant retroactive monetary damages and attorney's fees against a participating state licensing agency. The plaintiff has raised significant constitutional issues involving the Eleventh Amendment; however, because of my conclusion that the Randolph-Sheppard Act does not authorize arbitration panels to award retroactive monetary relief, including attorney's fees, it is unnecessary to reach the constitutional questions.

The parties agree that there is no mention of retroactive monetary damages in either the statutory language or the legislative history of the Act. In fact, the statute itself provides very little guidance as to the constraints within which arbitration panels are to act. Section 107d–1(a) indicates that the panel shall "arbitrate the dispute pursuant to section 107d–2 of this title...." Section 107d–2, in turn, adopts certain notice and hearing provisions of the Administrative Procedure Act and specifies the composition of the panel. Notably absent, however, is any indication of the remedial authority vested in the arbitration panel.

It is not disputed that inclusion of an arbitration provision in a contract between private parties is normally held to grant the arbitrators wide latitude in fashioning an appropriate remedy. This appears to be the view taken by the district court in *Georgia Dept. of Human Resources v. Bell*, 528 F.Supp. 17, 25 (N.D.Ga.1981), in summarily upholding an arbitration panel's award of retroactive damages under the Randolph-Sheppard Act as "a reasonable exercise of its powers to decide the dispute between the parties pursuant to section 107d–1(a)." However, the matter at issue here is not simply an arbitration provision in a private collective bargaining agreement. On the contrary, the issue is whether Congress intended to make participating states potentially liable for retroactive money damages, and that raises important considerations of federal/state comity.

---

**1.** The Secretary of the Department of Education urges that he is not bound by an arbitration panel decision that he considers legally erroneous and to which he was not a party, since to conclude otherwise would conflict with the Secretary's statutory duty to administer the Randolph-Sheppard Act in a uniform and consistent manner, 20 U.S.C. § 107a(a)(1). I agree. *See Georgia Dept. of Human Resources v. Bell*, 528 F.Supp. 17, at 22–24 (N.D.Ga.1981).

The intervenor-defendant Albanese argues that the purposes of the Randolph-Sheppard Act cannot be achieved unless the arbitration panels have the power to award monetary damages. He points to the fact that the Act was designed to "protect ... the livelihood, rights, and economic interests of blind vendors" (*Senate Report* 93–937, at 3), a goal which, it is urged, cannot be fully achieved unless monetary damages are available to rectify economic wrongs inflicted on blind vendors. Accordingly, argues Albanese, the "overwhelming implication" is that Congress intended to authorize monetary awards against participating states. He urges further, that by participating in the Randolph-Sheppard program the State waives any immunity from suit it might otherwise possess.

Although the Act itself is silent as to the relief that may be ordered by the arbitration panels, by necessary implication, the mandate to "arbitrate disputes" must include the power to provide appropriate prospective relief to blind vendors adversely affected by state action. Without that authority, the entire arbitration procedure would be meaningless. Panels convened pursuant to the Randolph-Sheppard Act have in fact afforded blind vendors a variety of prospective remedies, including (1) awards of contested or comparable vending facilities; (2) preferential consideration for the next available facility; (3) reinstatement in the program in the event of wrongful license revocation by the State; and (4) orders to the State to initiate certain action vis a vie federal agencies. [Answering Brief for Federal Defendant at 11].

It does not follow, however, that a retroactive damages remedy should be implied

as well. On the contrary, the Supreme Court has made it clear that retroactive monetary relief is not to be viewed as just another remedy when considerations of sovereign immunity are implicated.[2] The imposition of retroactive damages has unique fiscal consequences on the State treasury and, for that reason, raises important issues concerning the Eleventh Amendment and sovereign immunity. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Accordingly, it does not follow that whenever Congress provides an avenue for securing relief or redress from a state or federal instrumentality that a full complement of judicial remedies is presumed to be available. Unless Congressional intent to provide for retroactive money damages is clear, the courts should not find that remedy by implication: "Additional remedies of this kind are for the Congress to provide and not for the courts to construct." *Id.* at 404, 96 S.Ct. at 956.

As earlier noted, Congress has not clearly indicated an intent to subject states to damage awards under the Randolph-Sheppard Act. The text of the Act and its legislative history are silent on the point. Moreover, it cannot be said that implication of a damage remedy is necessary in light of the statutory scheme or the objectives of the Act. The statutory scheme can function effectively and the purposes of the statute will be served if the arbitration panels resolve disputes involving the states through prospective decrees only. Under such circumstances, courts properly infer

---

**2.** It should be noted that pursuant to the essentially parallel provisions of sections 107d–1(a) and (b) both state and federal agencies are directed to submit to the jurisdiction of the arbitration panels for resolution of disputes with blind vendors. Consequently, it appears that whatever remedies are found to have been authorized are potentially available against both state and federal instrumentalities. It is helpful to consider, therefore, whether the statutory language and legislative history support an inference that by providing for arbitration Congress intended to waive federal sovereign immu-

nity. There is clearly no basis for drawing such a conclusion, for it has repeatedly been emphasized that a waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. Testan, infra* at 399, 96 S.Ct. at 954, citing *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969). The usual rule that remedial statutes are to be liberally construed to effectuate their intended purpose is superseded by a rule of strict construction in a statute that waives sovereign immunity. *Bennett v. Dept. of Navy,* 699 F.2d 1140 (Fed.Cir.1983).

that Congress did not wish to burden state treasuries with retroactive damage awards.[3]

## IV. ATTORNEY'S FEES

■ It is well established that under the so-called "American rule," attorney's fees are not generally available unless specifically authorized by statute or contract. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). It is indisputable that the Randolph-Sheppard Act does not provide for an award of attorney's fees by arbitration panels convened pursuant to that statute. Clearly then, the panel had no statutory authority to award attorney's fees as an item of damages against D.V.I.

Intervenor-defendant Albanese argues, however, that this case falls within one of the recognized exceptions to the American rule, i.e., the general equitable power of courts to award attorney's fees based upon the bad faith or obdurate behavior of the defendant. *King v. Caesar Rodney School District,* 396 F.Supp. 423 (D.Del. 1975). Assuming for present purposes that an arbitration panel operating pursuant to the Randolph-Sheppard Act has the general power of a court of equity to award attorney's fees if the State has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons ..." or in an "obdurate" manner, e.g., by advancing "frivolous arguments ... or otherwise attempt[ing] to forestall a prompt adjudication," *Id.* at 428, the State's behavior in this matter cannot fairly be characterized in those terms. In fact, the arbitration panel itself found no indication of "bad faith or any purposeful

misreading of its obligations" by the D.V.I. On the contrary, "facing the question of how to fill a transfer/vacancy for the first time," the D.V.I. "made an understandable mistake by awarding the position to Mr. Rolph." [Appendix to Plaintiff's Opening Brief at 39–40] The eighteen month delay before Mr. Albanese finally took over the contested vending facility, although unfortunate, is due in part to the fact that Mr. Albanese's grievance was the first to be processed under the D.V.I.'s regulations.

## V. CONCLUSION

For the foregoing reasons, the panel's award of retroactive damages and attorney's fees against the D.V.I. must be overturned. The plaintiff's motion for summary judgment will be granted and the motion of intervenor-defendant Albanese will be denied.

3. The intervenor-defendant has also argued that by participating in the Randolph-Sheppard Act program, the State has consented to or waived any immunity to a damages remedy that it might otherwise have possessed. Of course the State cannot logically be held to have consented to a remedy that Congress did not intend to impose under the statute. But even if I had reached a different conclusion with regard to the intent of Congress, I am convinced that the State cannot be held to have waived its sovereign immunity by participation in the blind vendors program.

In *Pennhurst v. Halderman,* 451 U.S. 1, 24, 101 S.Ct. 1531, 1543, 67 L.Ed.2d 694 (1981) the Supreme Court enunciated an important principle with regard to determining the extent of the obligations a State may be held to have assumed by participating in a federally-funded program: "Congress must express clearly its intent to impose conditions on the grant of federal funds so that the States can knowingly decide whether or not to accept those funds.... Though Congress' power to legislate under the spending power is broad, it does not include surprising participating States with postacceptance or 'retroactive' conditions."