**Dr. Roy F. MACK, Plaintiff,**

v.

**The FLORIDA STATE BOARD OF DENTISTRY, Defendant.**

**No. 67–1344–Civ.**

United States District Court
S. D. Florida.
March 20, 1969.

Horton & Schwartz, Miami, Fla., for plaintiff.

Robinson & Randle, Jacksonville, Fla., for defendant.

CABOT, District Judge.

This cause came on for hearing before the Court sitting without a jury. After having considered the testimony and the proofs submitted, the file, and the advices of counsel, and being otherwise duly advised in the premises, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

This is a civil rights suit brought by a dentist whose license was revoked by the defendant. The action is brought under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Fourteenth Amendment of the Federal Constitution. The Court has jurisdiction both under the Federal Question Statute, 28 U.S.C. § 1331, (the Court finding that the value of the nature of the right sought to be protected is in excess of $10,000.00 exclusive of interest and costs), and under the Civil Rights Jurisdiction Statute, 28 U.S.C. 1343(4).

██ Prior to April 1, 1966, plaintiff was a licensed practicing dentist in the Southern District of Florida. The defendant Florida State Board of Dentistry (the Board), formerly known as the Florida State Board of Dental Examiners, exists under Florida Statutes, Chapter 466, F.S.A., as a regulatory and disciplinary agency for the practice of dentistry in the State of Florida. As such, the Board's actions complained of in the instant suit were done under color of state law. Accordingly, any action by the Board was state action so as to raise the questions under the Fourteenth Amendment and the Civil Rights Act.

In the Fall of 1965 certain complaints concerning plaintiff's practice were received by the Board through its Executive Secretary, then a Dr. Robert M. Denton. At a Board meeting held in Homosassa Springs, Florida, on October 2, 1965, Dr. Denton reported to the Board the fact of and nature of the complaints received concerning the plaintiff. Following the receipt of this information, the Board, apparently pursuant to its Rule 3.02, authorized Dr. Denton to more fully investigate the charges through the use of one Thor Behrans, a Miami private detective. During the progress of the investigation some or all the members of the Board were kept "well apprised" of its progress, as were Dr. Denton and Mr. Richard Randle, attorney for the Board. In fact, Dr. Denton made one trip to Miami to personally interview some of the witnesses.

The results of the investigation were made known to the Board under the authority of its Rule 3.03(a) and in late 1965, based on the investigation reports, the Board authorized the filing of an accusation against plaintiff, charging improper advertising of his name and services and misconduct which would bring discredit upon the dental profession. The accusation, which is in the nature of an indictment or information, was sworn to by Dr. Denton and then circulated to members of the Board who authorized holding of a hearing. This procedure follows Rule 3.05(a), (c). The hearing was originally set for January, 1966, but because of some technical problems it was required to be re-set and was held on February 18, 1966.

During the pre-hearing stages of the case, Dr. Mack was represented by counsel who filed certain motions with the Board which were referred to Mr. Randle for disposal. Mr. Randle stated that the motions had been, at least in most respects, denied. It is unclear from the record whether this was an independent determination on the part of Mr. Randle or was delegated to him by the Board itself. In any event, at the hearing the Board apparently delegated to Mr. Randle and Dr. Denton the decisions concerning whether counsel could have access to the documents called for by the motions. While the hearing was purportedly an adversary proceeding, in effect Mr. Randle, the prosecutor, was acting on behalf of the Board both in prosecuting and in rendering legal advice. Mr. Randle sat with the members of the Board behind a table facing the accused. He often conferred with the Chairman concerning rulings out of the hearing of the court reporter or defense counsel. Prior to the hearing he had prepared a "format" for the Chairman, the contents or existence of which were unknown to opposing counsel. He was present during executive sessions taken by the Board to consider rulings concerning the trial. Although the Board purported to make independent rulings concerning evidentiary matters, some of which were

of great importance at the trial, the record reveals that the Board, none of whom are lawyers, relied upon Randle to guide it in legal and evidentiary matters. As Dr. Farver, a Board member, candidly stated, "Well, we have to rely on him for legal aid and we believe what he says. So, if he does not want to admit it, fine."

In sum, both under the rules of the Board, 3.06(a), and Mr. Randle's practice, his function was that of "assisting the Board" in prosecuting the accused.

At the conclusion of the hearing the Board adjourned until the following morning. At that time they met in executive session to consider the evidence and make a determination of guilt or innocence and to determine the punishment, if any. Both Dr. Denton and Mr. Randle were present during the course of the executive session. The plaintiff was found guilty and his license to practice dentistry was revoked. Mr. Randle was authorized to and did prepare the formal findings which merely track the accusation previously filed. It is stipulated between the parties that the standard of proof used by the Board was less than the so-called reasonable doubt test as employed in criminal trials.

The plaintiff attempted unsuccessfully to overturn the revocation in the state courts, Mack v. Pepper, 192 So.2d 66 (Fla. 3d Dist. 1966), *cert.* denied, 201 So.2d 551 (Fla.1967). Thereupon, this petition was filed.

There are two questions to be decided by the Court, although discussed by defendant under four subdivisions. They are: (1) whether the Board, in proceedings to revoke a professional license such as this, is required to use the reasonable doubt test, and (2) whether the mixing of functions outlined in the foregoing resulted in a deprivation of plaintiff's rights to procedural due process. It should be pointed out that the plaintiff does not complain here of a denial of proper notice, or counsel, or the right to confrontation and cross-examination. The scope of this review, insofar as the

second question is concerned, is strictly limited to the constitutional propriety of the mixing of functions, as here outlined.

With respect to the standard of proof argument raised by plaintiff under the first question, the Court must point out that it is not being asked to determine what standard must be followed in an administrative proceeding such as this, but rather whether the proof must be such as to satisfy the reasonable doubt standard. As the Supreme Court has stated:

> It is of course within the power of the State to regulate procedures under which its laws are carried out, including * * * the burden of persuasion, "unless in so doing it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Speiser v. Randall, 357 U.S. 513, 523, 78 S.Ct. 1332, 1341, 2 L.Ed.2d 1460 (1958).

While, as plaintiff points out, there may be an "interest of transcending value" involved here, the Court cannot say that the reasonable doubt test as applied to non-criminal matters is "rooted in the traditions and conscience of our people."

■ The plaintiff erroneously relies upon the case of United States v. Costanzo, 395 F.2d 441 (4th Cir. 1968) as authority for his contention that proof before the Board must be beyond a reasonable doubt. That case, extending the reasonable doubt test to federal juvenile proceedings, specifically held that "a federal juvenile proceeding which may lead to institutional commitment must be regarded as 'criminal.'" United States v. Costanzo, *supra* at 444. [Emphasis supplied.] Accordingly, it is apparent that the Board was not required to use the "beyond a reasonable doubt" standard.

Turning to the second question, involving the charge of an unconstitutional mixing of functions, the facts here show an extreme example of the complaint of mixing. The adjudicator of fact, first,

authorized an investigation, second, was kept well apprised of the facts as they developed, and finally, authorized the filing of the charges.

In addition, at the hearing which was to be adversary in nature, the attorney, Mr. Randle, wore two hats: that of legal advisor to the supposedly impartial adjudicators of fact, as well as that of advocate for the prosecution. Prior to the proceedings, as well as at one point during the proceedings, the Board in effect delegated to the prosecutor the function of making the decisions on motions made by plaintiff's counsel. Furthermore, it is tacitly admitted that as to certain objections to questions propounded by Mr. Randle, the Board's legal advisor and prosecutor, he (Mr. Randle) in effect made the ruling.

Thus, we have the anomalous situation of Mr. Randle asking a question, plaintiff's counsel objecting, whereupon the Board turned to Mr. Randle for advice as to whether his question was objectionable, and of course, when he said that it was not, the objection was overruled. Likewise, at the times when the Board went into executive session, once to consider admission of exhibits, and once to make a final decision, the Executive Secretary, who swore to the accusation and acted as a liaison between the Board and the investigations, as well as the prosecutor, were present.

Translating the proceedings into criminal procedural terms, we have here a dentist of twenty years' practice, who has permanently lost the privilege to practice his profession, as the result of pre-trial proceedings and final hearing where the petit jury was made up of the same members as the grand jury; where the prosecuting attorney acted in some respects as the judge; where the foreman of the grand jury and the chief investigator for the state (Dr. Denton) sat with the jury; and finally, when the jury retired to deliberate, they did so in the presence of the prosecuting attorney and the so-called chief investigator, Dr. Denton. Were this a criminal trial being discussed, it could only be charac-

terized as foreign to our notions of fairness and justice and somewhat reminiscent of the Star Chamber proceedings which have hopefully been relegated to history.

The contention by the Board here is that while these procedures would not pass muster in a criminal trial setting, they are perfectly all right where all the defendant has to lose is his privilege to practice a profession in which he has been engaged for over twenty years. However, we think that In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), teaches otherwise. That case, which involved the procedure followed in disbarment of a lawyer, held that these proceedings are adversary and of a quasi-criminal nature. Although In re Ruffalo, *supra,* dealt with notice as an element of due process, the mixing of functions and appearance of unfairness such as we have here have not been beyond the condemnation of other courts. American Cyanamid Co. v. Federal Trade Comm., 363 F.2d 757 (6th Cir. 1966), and Amos Treat & Co., Inc. v. Securities and Exchange Comm., 113 U.S.App.D.C. 100, 306 F.2d 260 (1962), as well as state courts, Glass v. Mackie, 370 Mich. 482, 122 N.W.2d 651 (1963).

Accordingly, it is apparent that the following actions of the Board, taken together, deprived the plaintiff of the fundamental fairness required by the Constitution:

1. The adjudicator of fact being kept apprised of the facts of the investigation prior to the hearing.

2. The adjudicator of fact having the authority to authorize the filing of an accusation.

3. The legal advisor to the adjudicator of fact making decisions for the Board and also acting as prosecuting attorney.

4. The prosecuting attorney being present during deliberative sessions where defense counsel was not accorded the same right.

5. The Executive Secretary, who had charge of the investigation, being present during deliberative sessions of the adjudicator of fact.

While the requested relief of the plaintiff was restoration to his pre-hearing status, the Court is of the opinion that all he is entitled to is a new hearing with the procedures here condemned eliminated. This may be done by appointment of an independent special master or hearing officer for the purpose of taking testimony and making findings, or it may be done by such other procedures as may be devised so as to assure that fundamental fairness required by the United States Constitution and which was so noticeably lacking in the proceedings heretofore conducted by the Board.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the subject matter and the parties of this action.

2. The Board was not required to use the "beyond a reasonable doubt" standard in judging whether the accused, the plaintiff here, was guilty of the charges made against him, and the plaintiff was not deprived of due process of law under the Fourteenth Amendment to the United States Constitution by reason thereof.

3. The mixing of functions by the Board, as outlined in the Findings of Fact, deprived the plaintiff of procedural due process of law contrary to the provisions of the due process clause of the Fourteenth Amendment to the United States Constitution.

## FINAL JUDGMENT

Accordingly, it is ordered and adjudged that:

I. The order of revocation of license of plaintiff, Dr. Roy F. Mack, to practice dentistry in the State of Florida, issued by defendant, The Florida State Board of Dentistry, and effective April 1, 1966, be and the same is hereby declared null and void.

II. Defendant, The Florida State Board of Dentistry, is ordered and directed to provide plaintiff, Dr. Roy F. Mack, a new hearing in accordance with the requirements of the due process clause of the Fourteenth Amendment to the United States Constitution, on the charges heretofore brought against him, within 120 days from the date hereof, or on failure to do so to issue to Dr. Roy F. Mack, upon application, the necessary license and renewals thereof to practice dentistry in the State of Florida.

III. Plaintiff shall recover from defendant his costs incurred in and about this action, to be later taxed.