**KENTUCKY STATE BAR ASSOCIATION, Complainant,**

v.

**Harold D. STIVERS, Respondent.**

Court of Appeals of Kentucky.

Nov. 19, 1971.

Rehearing Denied March 3, 1972.

William M. Gant, Owensboro, Charles S. Cassis, William C. Stone, Louisville, for complainant.

Dailey & Fowler, A. James Higgs, Jr., Frankfort, for respondent.

PER CURIAM.

This proceeding comes before us on a rule to show cause why the respondent, Harold D. Stivers, should not be suspended from the practice of law for a period of three years and required to pay the costs of the disciplinary proceeding out of which the rule arose. RCA 3.450 (now RCA 3.410).

A charge was instituted by the Kentucky State Bar Association alleging that in June of 1969 the respondent, a member of the bar, "knowingly caused to be written and mailed a letter to Mrs. Mary L. Vertrees for the purpose of solicitation in direct violation of Canon 27 of the American Bar Association's Canons of Professional Ethics."

The respondent's answer denied that he had knowingly caused the letter to be written and mailed and stated affirmatively that it had been written, signed and mailed by some other person without his knowledge. Other defenses raised by the answer were that a violation of Canon 27 does not constitute proper grounds for disciplinary action and that under the authority of Louisville Bar Association v. Hubbard, 282 Ky. 734, 139 S.W.2d 773, 775 (1940), "an attorney may personally solicit business with impunity, where he does not take advantage of the ignorance, or weakness, or suffering or human frailties of the expected clients, and where no inducements are offered them."

The letter in question was as follows:

"Law Office

Harold D. Stivers

Tel. 587–0717

904 Portland Federal Bldg.
Louisville, Ky. 40202

121 Forest Drive
Jeffersonville, Ind. 47130

"June 5, 1969

"Mrs. Mary L. Vertrees
343 S. Shawnee
Louisville, Kentucky 40212

"Dear Mrs. Vertrees:

"According to the May 29, 1969 issue of the local Jeffersonville Indiana newspaper, you were involved in an automobile accident recently, in Clark County, Indiana. The newspaper account indicates that you were not at fault and therefore entitled to recover any damages you suffered, as a result of the accident, from the party at fault.

"In my practice of law, I handle cases of this nature and am admitted to practice in all courts, both in Kentucky and Indiana. I am in a position to represent you and prosecute the case all the way through suit, if necessary.

"If I can be of service to you in this matter, please call me at the above number and I will arrange an appointment for you to come into my office for a conference.

"Sincerely,

s/ Harold D. Stivers

HDS:jf"

A trial committee appointed by the president of the state bar association pursuant to the Rules of the Court of Appeals then prevailing conducted a full hearing in which the respondent and his counsel (provided by the association) participated, following which the committee made findings and a recommendation that the respondent be given a public reprimand, one of its three members recommending, however, that he be suspended from practice for six months. The matter was then considered by the Board of Governors of the association, which adjudged the respondent guilty and recommended to this court that he be suspended from the practice of law for three years and be required to pay the costs of the proceeding.

The respondent was admitted to practice in this state in May of 1952 and was admitted to practice in Indiana in 1967. He resides in or near Jeffersonville, Indiana, and maintains an office for the practice of law in Louisville. A great many people who live in Louisville work in a munitions plant at Charlestown, Indiana, and from time to time these employes are involved in automobile accidents while traveling to and from their work along the highway between Jeffersonville and Charlestown. It occurred to the respondent that many of them would not be acquainted with an attorney or attorneys qualified to practice in both states. He was under the impression, which he says he confirmed through research and conversations with other lawyers, that it was within the bounds of legal ethics for an attorney to establish contact with a prospective client "in a proper way" so long as he did not engage in "ambulance chasing" or employ runners to solicit business. He had one secretary in his office, who seems to have had a good deal of initiative in that she had assisted in the drafting of form letters for collection work and often exercised her own discretion in selecting proper forms, preparing and signing letters, and mailing them without the specific knowledge or advance approval of the respondent. Both the re-

spondent and his secretary had noticed frequent newspaper reports of automobile accidents in Indiana involving Kentucky residents, and they had discussed the prospect of drafting a letter that might be used in making contact with such people. They both testified in this proceeding that about two months before June of 1969 the secretary on her own volition prepared a rough draft of a letter and showed it to the respondent, who made a few changes and then laid it aside for further discussion. According to the secretary, it was she who decided to send a letter to Mrs. Vertrees, and it was she who typed it, signed the respondent's name, and mailed the letter, along with five or six other similar communications, without the respondent's knowledge or approval. The respondent testified to the same effect. He said he had tentatively approved the form when first drafted, and saw nothing unethical in sending such a letter, but he denied that he had ever made a decision to do so or that he had any knowledge of the letter to Mrs. Vertrees until he later received an inquiry from the Louisville Bar Association. There was no evidence of any similar letters on other occasions or of the respondent's having had any more knowledge of the other letters sent by his secretary at the same time than he had of the letter sent Mrs. Vertrees. He was not personally acquainted with Mrs. Vertrees.

The factual findings of the trial committee are mainly a summary of the evidence followed by this conclusion:

> "The Committee finds that the actions of Harold D. Stivers in writing the letter to Mary Vertrees, or even permitting and condoning it to be sent over his signature, constitutes unethical conduct. The Committee believes that such conduct warrants disciplinary action."

In view of the specific charge that he *knowingly* caused the letter to be written and mailed, the respondent attacks this finding as equivocal and indecisive and as revealing an inability on the part of the

trial committee to find substantial evidentiary support for a conclusion that the letter was a deliberate act of his own. Undoubtedly the finding was not as direct as it could have been. However, it seems to us that it necessarily implies the respondent did one of three things—either he wrote the letter and had it sent, or he consciously permitted it to be written and sent, or he condoned it in the sense that he purposely gave his secretary reason to believe it would be desirable or permissible for her to write and send letters of that kind. In any of these circumstances it could be fairly said that he "knowingly" caused the letter to be prepared and sent. We are of the opinion that the evidence supports a conclusion that the respondent did have such knowledge. Absent conclusive proof to the contrary, the fact that the letter went out of his office on his letterhead is enough in itself to warrant the inference that it was done with his knowledge. The countervailing evidence given by the respondent and his secretary was not of such convincing force that reasonable men would be required to believe it. To the contrary, it would seem rather difficult to believe that the letter actually went out of the respondent's office *without* his knowledge and approval.

In any event, the report and recommendations of the trial committee are only advisory to the Board of Governors, as are the Board's recommendations to this court. RCA 3.400, 3.420 (now RCA 3.360, 3.370). This means, of course, that in the end this court must be judge of the factual as well as the legal issues and of the final action to be taken. The role of fact-finder is neither welcome nor comfortable to an appellate court, but obviously we have saddled it upon ourselves by our own rules for this type of proceeding. So, without beating about the bush we now find the charge to have been sustained by the evidence produced before the trial committee—that is to say, the evidence persuades us that the respondent either deliberately caused the letter to be sent or else had enough to do

with it to be chargeable with knowledge that it would be done.

At the time the letter was mailed RCA 3.170 (originally adopted by an order entered May 14, 1946) provided as follows:

"The Court recognizes and accepts the principles embodied in the American Bar Association's Canons of Professional and Judicial Ethics as a sound statement of the standard of professional conduct required of members of the Bench and Bar, and the Court regards these Canons as persuasive authority in all disciplinary proceedings against members of the Bar."

Canon 27 provided that it is unprofessional "to solicit professional employment by circulars, advertisements, through touters *or by personal communications* or interviews not warranted by personal relations." (Emphasis ours.)

It is contended, however, that the "persuasive authority" of Canon 27 must yield to what this court has said to the contrary:

In Chreste v. Louisville Ry. Co., 167 Ky. 75, 180 S.W. 49, 53 (1915), it was held "that mere solicitation on the part of an attorney, unaccompanied by fraud, misrepresentation, undue influence, or imposition of some kind, or other circumstances sufficient to invalidate the contract, is not in itself sufficient to render a contract between an attorney and client void on the ground that it is contrary to public policy."

In Louisville Bar Ass'n. v. Hubbard, 282 Ky. 734, 139 S.W.2d 773 (1940), an attorney was suspended from practice for several improprieties including the solicitation of accident cases through an employed "runner," and in undertaking to distinguish between the permissible and the impermissible the court said, "While it is not within keeping with the ethics of the profession, and we do not condone it, yet, an attorney may personally solicit business with impunity, where he does not take advantage of the ignorance, or weakness, or suffering,

or human frailties of the expected clients, and where no inducements are offered them."

Both the *Chreste* and the 1940 *Hubbard* case were decided prior to adoption of the rule recognizing the Canons of Professional Ethics as persuasive authority. Nevertheless, in Petition of Hubbard, 267 S.W.2d 743 (1954), the court evidently signified its continuing approval of the above quoted passage from the 1940 *Hubbard* case by adding this modification: " 'and where he does not stir up strife and litigation and hunt up defects in title or other causes of action and inform thereof in order to be employed to bring suit or collect judgment,' as condemned in Canon 28 of the American Bar Association." 267 S.W.2d at p. 744.

In the 1954 *Hubbard* case the court approved an advisory opinion to the effect that Canon 28 prohibits a lawyer from soliciting employment by other lawyers to collect unsatisfied judgments. The opinion does not mention Canon 27. Clearly, however, it does condemn the solicitation of employment to bring suit. The plain purpose of the respondent's letter to Mrs. Vertrees was to inform her that she probably had a cause of action and to solicit employment by her for its prosecution. We are quite unable to understand how anyone could read the 1954 *Hubbard* opinion without realizing that it damns the solicitation of employment for the purpose of instituting litigation. It would seem more probable that the respondent neither knew nor cared what the law or the canons said. Had he entertained a sincere doubt about the matter he could have sought an advisory opinion under RCA 3.590, as had been done in the 1954 *Hubbard* case.

We reject out of hand the contention that the type of solicitation here involved was of such doubtful impropriety under the existing case law of this state that disciplinary sanctions against the respondent would deprive him of substantive due process guaranteed under the United States Constitution.

It is further argued that irregularities in the conduct of the proceeding by the Board of Governors constituted a denial of procedural due process, in that the chairman of the trial committee and certain employes of the bar association including its director and general counsel were present during the Board's consideration of the report and recommendations of the trial committee, whereas neither the respondent nor anyone representing him was permitted to attend or participate in the deliberative process. It is again the familiar problem of an administrative agency's mixing the functions of adversary and judge. Cf. Mack v. Florida State Board of Dentistry, 296 F.Supp. 1259 (D.C.Fla.1969).

We concede that no person who has participated in the investigation, prosecution, or hearing before the trial committee should be present in the deliberative process of the Board of Governors. To the extent that their presence is permitted, any final action of the Board will necessarily be stigmatized. But it must be recognized that its action is nothing more than advisory to this court. So far as we are concerned the Board proceeding is mainly a screening device by which the respondent may be finally acquitted but cannot be convicted. This court is just as ignorant of what took place behind the closed doors of the Board meeting as is the respondent, and it is not bound to any degree by the result. In a matter as serious as this the advisory weight of the Board's action can be little more than hortatory, which means in simple English that the members of this court are going to exercise their own judgment anyway.

We are unanimous in the opinion that the charge is sustained by the weight of the evidence, and the consensus among the members of the court is that the respondent should be suspended from the practice of law in this state for one year, costs to

be assessed as provided by RCA 3.520 (now RCA 3.450).

The proceeding having been conducted under the rules prevailing before the order of July .2, 1971, promulgating amended rules, the requirements of RCA 3.390, effective July 2, 1971, shall not apply.

It is ordered that the respondent be and he is hereby suspended from the practice of law in this Commonwealth for the period of one year, subject to reinstatement as provided by RCA 3.510, and required to pay the costs of this proceeding.