531 So.2d 787 (1988)
William D. ALLEN, D.D.S.
v.
LOUISIANA STATE BOARD OF DENTISTRY.
No. 88-CA-0695.
Court of Appeal of Louisiana, Fourth Circuit.
September 16, 1988.
Rehearing Denied October 12, 1988.
*789 Guy Wootan, Patricia J. Hakes, Wootan and Stakelum, New Orleans, for defendant/appellee.
Paul R. Baier, Baton Rouge, for plaintiff/appellant.
Before GARRISON, BYRNES and LOBRANO, JJ.
LOBRANO, Judge.
This appeal arises out of the March 24, 1986 ruling of the Louisiana State Board of Dentistry finding Dr. William D. Allen guilty of twenty-three (23) counts of violating La.R.S. 37:776(10), relative to employees engaged in the unauthorized practice of dentistry with Dr. Allen's knowledge and consent, plus four (4) additional counts of violating La.R.S. 37:776(12) and 37:775(18), [now 37:775(11)] relative to false and deceptive advertisements and failure to have established and written work orders. Dr. Allen's license to practice dentistry was suspended for ten (10) years and he was placed on probation for ten (10) years thereafter. In addition, Dr. Allen was ordered by the Board to pay $25,500.00 in fines and $61,478.19 in hearing costs. He then sought review of the Civil District Court of Orleans Parish.
PROCEDURAL HISTORY
During the summer of 1985, the Louisiana State Board of Dentistry (the Board) received several complaints that Dr. Allen was conducting his dental practice in violation of certain provisions of the Louisiana Dental Practice Act, La.R.S. 37:751, et. seq. Dr. J. Roy Chustz, the Board's president, referred these complaints to Guy Wootan (Wootan), counsel for the Board. Dr. Chustz requested that Wootan review the complaints and inform him as to whether administrative action by the Board was warranted. On November 4, 1985, the Board filed formal charges against Dr. Allen in the form of a Notice to Show Cause Why License Should Not Be Suspended or Revoked for violations of La.R.S. 37:775 and 37:776.
Pursuant to the provisions of the Louisiana Dental Practice Act, an administrative hearing was properly and timely noticed for December 7, 1985. Six charges were filed against Dr. Allen consisting of a total of 45 individual counts. Four of the charges alleged that Dr. Allen employed, procured, induced, aided, abetted and directed persons not licensed as dentists to *790 engage in the practice of dentistry.[1] Charge six alleged that Dr. Allen violated La.R.S. 37:775(18) [now 37:775(11) ] by failing to issue signed work orders to laboratory technician Edith McClendon. Charge seven alleged Dr. Allen violated La.R.S. 37:776(12) by engaging in "bait and switch" advertising.
On November 26, 1985, Dr. Allen filed a Request for Judicial Review in the Civil District Court for the Parish of Orleans requesting a continuance of the December 7, 1985 administrative hearing. In accordance with the district court's order, the hearing was continued to February 21, 1986. Prior to the February hearing, extensive discovery was conducted by Dr. Allen and the Board. Dr. Allen took the deposition of nine (9) witnesses, including two ex-employees, Brenda Gremillion and Terry Marino. Dr. Allen did not depose any of his patients.
On January 23, 1986, Dr. Allen filed an additional Petition for Judicial Review of Preliminary Agency Action in which he sought to take the deposition of Wootan.
On February 13, 1986, Dr. Allen filed a multi-million dollar lawsuit against all the Board members and Wootan, individually, and in their official capacities, in the United States District Court for the Eastern District of Louisiana.[2]
On February 18, 1986, a hearing was held in the Civil District Court on Dr. Allen's Petition to take Wootan's deposition. After hearing testimony from Wootan, the district court denied Dr. Allen's request on attorney work product grounds.
On February 20, 1986, Dr. Allen filed with the Board a Motion to Recuse all members from hearing the case because of the federal lawsuit. The motion was denied by the Board at the start of the February 21, 1986 administrative hearing. The administrative hearing lasted four days and concluded on February 24, 1986. Dr. Allen was present at all stages of the hearing and was represented by able counsel.
The Board received testimony from 30 witnesses, 12 called by Wootan and 18 called by the defense. In addition, the Board received into evidence 62 exhibits, 46 offered by Wootan and 16 offered by the defense. Of the numerous witnesses to testify, five were patients of Dr. Allen and one was the mother of a patient.
At the conclusion of the hearing, the matter was taken under advisement. On March 1, 1986, the disciplinary committee (the committee) met in Lafayette to review the evidence and deliberate on a decision. No other Board member nor Wootan attended this meeting.
Dr. Lionel de la Houssaye, chairman of the committee, notified Wootan of the committee's decision and dictated the decision, either guilty or not guilty on each charge and each count together with factual findings and the disciplinary action taken. Dr. de la Houssaye then instructed Wootan to prepare a draft as per his dictation and submit same to the committee for their review. Wootan complied. The draft decision was reviewed and signed by each committee member.
Of the 45 violations with which Dr. Allen was charged, the committee found him guilty of 27 violations. The 18 remaining violations were either voluntarily dismissed by Wootan or dismissed by the committee.
The committee suspended Dr. Allen's license to practice dentistry for ten (10) years and placed him on probation for an additional ten (10) years. He was also ordered to pay $25,500.00 in fines and hearing costs of $61,478.19.
On February 26, 1986, Dr. Allen filed a Petition for Rehearing wherein he accused Wootan of complicity in an alleged illegal *791 entry into his office by Brenda Gremillion and Terry Marino.
On March 27, 1986, Dr. Allen filed a Petition For Judicial Review and Stay Order in the Civil District Court for the Parish of Orleans.
On April 2 and 7, 1986, Dr. Allen filed two more Petitions for Rehearing with the Board.
On April 2, 1986, Dr. Allen amended his first petition in Civil District Court to include $7,500.00 reimbursement for costs pursuant to La.R.S. 49:965.1 and filed a second amended Petition for Judicial Review and Stay Order alleging numerous violations of his constitutional rights.
On April 14, 1986, the Board denied Dr. Allen's three petitions for rehearing.
Pursuant to Dr. Allen's Petition for Judicial Review, a hearing was held in the Civil District Court on May 2, 1986. The court ordered the administrative hearing reopened on the following limited basis:

"FIRST: The parties are to develop a record from the examination of Brenda Gremillion and/or Terry Marino of the circumstances of an alleged illegal entry into Dr. Allen's dental offices prior to the February 21, 1986 administrative hearing. Both parties shall have the right to cross examine both witnesses.

SECOND: The defense will be entitled at the limited rehearing to adduce all evidence in connection with the proffers of proof preserved in the record. Such evidence will be adduced as provided by Louisiana Code of Civil Procedure Article 1636. The defense shall furnish to the prosecuting attorney for the State Board a detailed listing of proffered evidence and list of witnesses at least thirty (30) days before the limited rehearing ordered by this Court."
The administrative rehearing was held on June 21, 1986. At the conclusion of the rehearing, the committee rendered a decision affirming its prior decision in all respects.
On August 28, 1986, Dr. Allen filed a First Supplemental Petition (Fourth Amending Petition) in the district court alleging additional violations of his constitutional rights. He also contested the Board's assessment of the limited rehearing costs in the sum of $9,749.48.
On October 8, 1986, Dr. Allen took writs to this Court on the district court's refusal to allow him to take further depositions of Wootan and other Board members. This Court denied writs on October 21, 1986.
Previous to the taking of these writs, Dr. Allen on October 6, 1986, filed a Petition for Evidentiary Hearing, wherein he requested an evidentiary hearing as to the involvement of Wootan and his law firm in the decision making process of the Board. The district court denied this petition. This court denied writs on this issue on November 21, 1986. On that same day, the Supreme Court granted writs, directing the district court to take evidence concerning the issue of Wootan's alleged involvement in the Board's decision.
On May 29, 1987, Dr. Allen filed another Petition For Evidentiary Hearing alleging new evidence of Wootan's involvement in the alleged break in.
On June 22, 1987, prior to argument on the Petitions for Judicial Review, the district court heard evidence on Wootan's alleged involvement in the drafting of the Board's decision and the additional allegations of wrongdoing. The district court found "not a scintilla of evidence" to support the allegations against Wootan.
On September 29, 1987, the district court rendered judgment reversing six (6) of the Board's findings of professional misconduct, reducing the fine to $19,500.00 and affirming the remaining 21 counts of misconduct.
From this judgment, Dr. Allen appeals asserting the following assignments of error:
1) The district court erred in holding that "admission of the evidence acquired in the illegal entry was proper."
2) The court below erred in ignoring La. R.S. 49:960A and in holding that due process was not violated by the prosecutor's drafting the findings of fact adopted verbatim by the Board.

*792 3) The district court erred in holding that under La.R.S. 37:779 "The Board had no affirmative obligation to call Dr. Allen's patients prior to the filing of the charges."
4) The Board and the court below erred in applying La.R.S. 37:775(18) to work orders personally given by a dentist to his dental laboratory technicians who work on the same premises under his direct supervision.
5) Dr. Allen was denied a fair hearing before a fair tribunal.
6) The findings of guilt on the remaining charges not dismissed are manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record.
ASSIGNMENT OF ERROR 1:
Dr. Allen admits that there is no direct evidence that Wootan knew of the illegal entry into his office by Gremillion and Marino. However, he asserts that the trial court erred by failing to find that the record plainly establishes that Wootan incited the illegal entry by telling Marino that he needed more information in order to file charges. He claims that by this statement to Marino, Wootan violated his (Dr. Allen's) constitutional right against unlawful search and seizure as protected by Article I, Section 5 of the Louisiana constitution and the Fourth Amendment to the United States Constitution. He argues the evidence seized from his office should not have been admitted. We disagree.
A review of the record clearly indicates that there is insufficient evidence to suggest that Wootan participated in or conspired with Gremillion and Marino in their entry and search of Dr. Allen's office.
Both Gremillion and Marino testified at the Board's rehearing on June 21, 1986. It is apparent from their testimony that Wootan had no knowledge of their entry into Dr. Allen's office.
Gremillion testified as follows:
When asked by Mr. Wootan:
"Why didn't you come to me at any time before the February 21, 1986 hearing and say, `Mr. Wootan, I went into Dr. Allen's office illegally?' Why didn't you tell me that?"
Ms. Gremillion responded:
"For the simple fact that I had done an illegal act and I'm not completely stupid that I'm going to walk up and tell the whole world."
"... if you had done something illegal, would you tell anyone? Just anyone? I don't know you that well. That's the first time I had ever met you."
As to her telephone conversation with Wootan, Marino testified that he told her
"that it would be helpful if we could remember names of patients that we worked on and the dates we worked on them and what we did." (Emphasis added)
Thus, it is apparent that Gremillion and Marino acted on their own. Dr. Allen's assertion that Wootan aided and abetted the break in into his office is not supported by the record.
A search and seizure conducted by private individuals is not proscribed by either the Louisiana or Federal Constitution. The protection afforded by the Fourth Amendment is applicable only to governmental actions. United States v. Jacobsen, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); State v. Gentry, 462 So.2d 624 (La.1985). Furthermore, even where a public official is involved in the "search" the exclusionary rule is not applied to exclude evidence in a civil proceeding, either state or federal. United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). The exclusionary rule is a judicially created remedy to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the aggrieved party. United States v. Janis, supra.; United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). As such, the application of the exclusionary rule is to be "restricted to those areas where its remedial objections are thought most efficaciously served." United States v. Calandra, supra. 94 S.Ct. at p. 620. In *793 a civil proceeding, the deterrent benefits of exclusion must outweigh the costs. United States v. Janis, supra. In Pullin v. Louisiana State Racing Commission, 484 So.2d 105 (La.1986) our Supreme Court using the Janis analysis, refused to apply the exclusionary rule in an administrative hearing where the deterrent value of the rule's application was outweighed by the social costs attendant to the exclusion of the evidence. The court cited the strong interest of the state in regulating horse racing against the possible deterrent effect of suppressing the evidence.
In the instant case, the deterrent value of excluding the evidence is far outweighed by the state's great public health interest in regulating the quality of dental care afforded its citizens. Suppression of the evidence would only serve to diminish the Board's responsibility to the citizens of Louisiana receiving dental care because of the conduct of two private citizens.[3] We find no error in the trial court's determination that the evidence was admissible.
ASSIGNMENT OF ERROR 2:
Dr. Allen asserts that the district court erred in not reversing the Board's decision because of Wootan's involvement in the decision making process.
Pursuant to La.R.S. 49:964(F), a supplementary hearing was held to determine Wootan's involvement in the drafting of the decision. A careful review of the record reflects that the draft by Wootan was not written until after the committee met and deliberated, and after Dr. de la Houssaye telephoned Wootan and read to him the committee's decision on each count. The record clearly demonstrates that there was no communication between Wootan and any committee member during the disciplinary hearing and the meeting to deliberate and reach a decision.
The committee members testified that at the time they deliberated, all the evidence and notes taken at the hearing were available. They deliberated two to three hours, specific determinations as to guilt or innocence were made on each count of each charge. Specific determinations were made with respect to the fines to be assessed on each charge and a specific levy was made to cover all costs. The committee instructed Dr. de la Houssaye to convey their decision to Wootan and to instruct him to draft the decision. Dr. de la Houssaye testified that approximately two days later, he telephoned Wootan regarding the committee's decision. He stated he spoke at length with Wootan not only with regard to the guilty or innocence decision on each charge, but also as to the committee's reasons for their decision. The draft decision was circulated to each member of the committee who reviewed and signed it.
As to Dr. Allen's argument that Rosa Jones' testimony is proof of "the overreaching and exaggeration evident in the Board's decision," we find no merit. In regards to this alleged overreaching, Dr. de la Houssaye testified as follows:
Question: "Did you tell Mr. Wootan specifically about the testimony of Rosa Jones?"
Answer: "I really think I did. I can't remember if I told him exactly the words that I read here but under each specification we went at length as to why we had arrived at that decision."
As to what he told Wootan concerning Ms. Jones' vacillating in her testimony, he stated:
"I could very well have said exactly that. I can not recall. This has been over a year. I cannot recall if I said the lady vacillated. I may have said she switched back and forth."
Thus we find no merit in Dr. Allen's assertion that the opinion contained prosecutorial superimposition with respect to Rosa Jones' testimony.
ASSIGNMENT OF ERROR 3:
Dr. Allen asserts that his due process rights were violated by the Board's failure to contact the patients involved before filing formal charges, citing La.R.S. 37:779. However we agree with the trial court that the statute does not impose any *794 affirmative requirement that charges filed by the Board be substantiated.
La.R.S. 37:779 provides:
"All charges against a dentist or a dental hygienist under R.S. 37:776 or 37:777 for violations of this Chapter shall be made under oath either by the secretary-treasurer, a duly authorized inspector, a member of the board, or any citizen, and submitted to the president of the board, who, unless for good and sufficient cause shown by his written reasons, shall appoint a committee of three or more members of the board besides himself to hear the charge. A member of the board making the charge shall be ineligible to sit as a member of the committee. The president shall designate the time and place of the hearing.
Where the charge is made by a citizen, he should state the sources of his information and the grounds of his belief, and the secretary, a member, an inspector, or an agent of the board shall substantiate the charge by determining that the citizen is informed and believes that the the charge is true."
The above requirements were clearly met. The formal charges brought against Dr. Allen were made under oath by the secretary-treasurer of the Board. The record clearly indicates that citizens, former employees of Dr. Allen, complained to the Board and that the Board determined whether the citizens were informed and believed the charges were true. The Board had no affirmative obligation to call Dr. Allen's patients prior to filing charges.
ASSIGNMENT OF ERROR 4:
Dr. Allen asserts that former La.R.S. 37:775(18) [now 37:775(11) ] does not apply to an in-house laboratory technician who works under the direct supervision of the dentist on the same premises. Rather, he asserts the statute applies only to laboratory work performed outside of the supervision of the dentist so as to prevent outside labs from bypassing the dentist and providing dentures directly to patients. He argues the intent of the statute is clear arguing that La.R.S. 37:775(18) [now 37:775(11) ] should be read in pari materia with La.R.S. 37:752(6) and (1) which exempt dental labs from the prohibition against practicing "dentistry" so long as they make their false teeth "upon written work orders or prescriptions furnished by a licensed and registered dentist on a form approved by the Louisiana State Board of Dentistry..."
La.R.S. 37:775(18) [now 37:775(11)] defines unprofessional conduct as the:

"employment or engaging of services of any person, firm or corporation to construct, repair, furnish, supply or reproduce a ... substitute for natural teeth without furnishing a written work order... which shall contain ... the signature of the dentist." (Emphasis added).
The language of the statute does not suggest an exemption for in-house labs. The dentist's signature is required on lab work orders because the dentist alone is responsible for the design of the dental appliance and by his signature he certifies the work as his and takes responsibility for it. The purpose of the statute is to prevent those not licensed to practice dentistry from doing so whether they are employed by the dentist to do work outside his office or within his office. If the legislature had intended exceptions to this regulation they would have listed them.
ASSIGNMENT OF ERROR 5:
Dr. Allen asserts that he did not receive a fair hearing and cites the following instances of impropriety in support thereof:
1) There was an attitude of antagonism by the Board throughout the hearing;
2) Dr. de la Houssaye, chairman of the committee showed overwhelming bias in favor of the prosecution;
3) Wootan became a member of the hearing panel by telling Dr. de la Houssaye what his rulings should be and;
4) Dr. De la Houssaye and the other committee members "cross-examined" witnesses.
Dr. Allen asserts that the committee's antagonism denied him due process. A review of the record clearly shows that this *795 matter was bitterly contested by all parties and their counsel. Defense counsel accused Wootan of being "out to get Dr. Bill Allen". Wootan understandably took exception to this accusation. Dr. de la Houssaye, in an attempt to keep order, then admonished defense counsel declaring that "Mr. Wootan is not on trial here." Defense counsel then stated that his theory of the case was that the Board's lawyer (Wootan) had grossly exaggerated the charges. To which Dr. de la Houssaye responded, "That sounds a lot better than what you said before."
Dr. Allen further asserts that as the hearing continued it became "explosive". He refers to several instances of an inflammatory natureWootan's comment that he found the defense motion to dismiss "scandalous"; Dr. de la Houssaye's remark that he was "angry"; the committee's refusal to permit the defense to recall Brenda Gremillion and finally Dr. de la Houssaye's expressed anger when questioned about Wootan's fees and their relationship to the fines collected by the Board.
Although we admit the record suggests that the attorneys were overzealous at times, we find no merit in Dr. Allen's contentions. Wootan's response that defense counsel's motion to dismiss was "scandalous" was in response to the first paragraph of said motion which stated that the entry into Dr. Allen's office was done "at the behest of and with the indicated approval of Guy Wootan ..." (emphasis added). Wootan's response was natural under the circumstances. Furthermore, Dr. de la Houssaye's statement that he was "angry" was in response to an attempt to bring order back to the hearing after the various counsel began arguing with each other. In addition, the committee's refusal to allow defense counsel to recall Brenda Gremillion was well founded. It had been agreed that the defense would ask any questions of Brenda Gremillion at the February 22, 1986 hearing. On that date, the defense indicated it had no questions for her and she was excused. Even assuming arguendo that due process required that Gremillion be recalled, such an error was cured by her extensive testimony at the June 21, 1986 rehearing ordered by the district court.
Dr. Allen also contends that Dr. de la Houssaye showed overwhelming bias in favor of Wootan. Dr. Allen complains that "time and time again" Wootan's objections would be sustained without hearing from the defense. Dr. Allen cites two instances. The first concerns Wootan's objection to Dr. Chustz's testimony concerning the prosecution of another dentist with whom settlement negotiations were pending. Dr. de la Houssaye sustained the objections but immediately thereafter allowed defense counsel to explain the basis for this line of questioning. The second instance involved defense counsel's questions about a prior Board prosecution of Dr. Allen. Dr. de la Houssaye sustained Wootan's objection to this testimony but not after allowing defense counsel to present an explanation. Dr. Allen's contention of bias in this regard is not borne out by the record.
Dr. Allen claims that "throughout the proceedings" Wootan made himself a member of the hearing panel by telling Dr. de la Houssaye how to rule and that this commingling of functions served to deny him due process. Dr. Allen points to several instances of alleged commingling of functions. The first involves Wootan's refusal to confer with Dr. de la Houssaye after both sides had commented on whether or not defense counsel's Motion to Dismiss, accusing Wootan of requesting and approving the entry into Dr. Allen's office, should be filed into evidence.[4]
The next alleged example of commingling occurred after Dr. de la Houssaye admonished defense counsel to be accurate in his characterization of prior testimony. Wootan requested that Dr. de la Houssaye move on. Dr. de la Houssaye agreed that the hearing should proceed but only after a lengthy colloquy between defense counsel and Dr. de la Houssaye.
The third and final example was when Mr. Parker (co-defense counsel) stated that Dr. de la Houssaye was refusing to let him *796 recall Brenda Gremillion. Wootan responded by arguing that the reason Dr. de la Houssaye refused defense counsel's request was that the defense declined to question her as agreed upon at the February 22, 1986 hearing. The record reflects that Wootan did not put words into Dr. de la Houssaye's mouth. Dr. de la Houssaye had previously refused to recall Gremillion for the same reason.
Thus, there is nothing in these three instances cited by Dr. Allen to justify a finding of the kind of impermissible commingling as found in Mack v. Florida State Board of Dentistry, 296 F.Supp. 1259 (S.D.F1.1969).[5]
Finally, Dr. Allen complains that he was denied a fair hearing because the members of the committee questioned witnesses. A close examination of the record indicates that the questions asked were an attempt to resolve conflicting testimony. The record clearly shows that the committee members asked questions of both prosecution and defense witnesses to find the truth and not in an attempt to confront and argue with the witnesses or make sarcastic and adverse comments about their credibility.[6]
Thus we hold that the record does not support Dr. Allen's argument that he was denied due process and a fair trial.
ASSIGNMENT OF ERROR 6:
The district court reversed six (6) of the Board's 27 findings of professional misconduct. Dr. Allen asserts that the court below was manifestly erroneous in affirming the remaining specifications under Charges 1, 2, 3, and 7. He specifically argues that the evidence does not support a finding of guilt as to these specifications. In addition he questions the district court's rejection of Brenda Gremillion's testimony on six of the specifications as contradictory and inconsistent while accepting her testimony on twelve other specifications.
We agree with the trial court's analogy that the burden of proof in an administrative hearing of this nature is by clear and convincing evidence. See, Louisiana State Bar Association v. Mitchell, 375 So.2d 1350 (La.1979). That is, the burden is below the "beyond reasonable doubt standard" but greater than a "mere preponderance". And, in reviewing the findings of an administrative body proper regard for the expertise of that body should be maintained. Central Louisiana Electric Co. Inc. v. Louisiana Public Service Commission, 377 So.2d 1188 (La.1979). The credibility of witnesses is best left to the trier of fact in an administrative hearing. Hanson v. Louisiana State Racing Commission, 436 So.2d 1308 (La.App. 4th Cir.1983). A reviewing court should not disturb the trier of fact's reasonable evaluation of credibility or reasonable inferences of fact even if the court feels that its own evaluations and inferences are equally reasonable. Walker v. Traveler's Insurance Company, 336 So.2d 938 (La.App. 4th Cir. 1976); Nailor, On Behalf of Nailor v. International Harvester Company, 430 So. 2d 784 (La.App. 5th Cir.1983), writs denied, 437 So.2d 1148. Where the professional judgment of a licensing board made up of one's peers is involved, the scope of review is limited to a determination of whether the ruling was unreasonable, arbitrary, capricious or amounted to an abuse of discretion. Hughes v. Louisiana State Board of Dentistry, 490 So.2d 1097 (La.App. 4th Cir. 1986), writs denied, 496 So.2d 326, cert. *797 den. 480 U.S. 933, 107 S.Ct. 1573, 94 L.Ed. 2d 764 (1987). A reviewing court should be cognizant of the strong presumption of validity and propriety in such an administrative action where judgment upon the professional behavior of a fellow member of a profession is a matter peculiarly within the expertise of an agency composed of members of that profession. Hughes, supra.
Thus, the findings of fact by the Board must be viewed in light of this strong presumption of validity. We have reviewed the charges argued by Dr. Allen as being erroneous. We reverse three specifications of charge 2, and affirm the remaining charges.
CHARGE 2 SPECIFICATION 4:
Dr. Allen charges that Brenda Gremillion testified that although she "did a wax try-in for Jeff Chamberlain, she did not testify that she placed it in his mouth". A wax try-in necessitates that it be placed in the patient's mouth to determine the proper occlusion. Only the dentist is licensed to make such a determination. While Dr. Allen hypothesizes that it is possible that the patient placed the try-in in his own mouth, the record does not substantiate such a finding. Chamberlain testified that he returned several days later to receive his partial denture. He stated that Dr. Allen did indeed place the partial in his mouth but that when he complained that it was too tight, Dr. Allen left the operatory instructing Gremillion to show him how to take the denture in and out of his mouth. When she was unable to remove the partial, she summoned Dr. Allen who pried it out. He then gave it to Gremillion who "filed them" and placed the denture back into Chamberlain's mouth. Dr. Allen never returned to check the patient.
We affirm this charge.
CHARGE 2 SPECIFICATION 6:
Gremillion testified that she delivered dentures to Charlie Mae Sims. This testimony was corroborated by Sims. In response to the question, "Who gave you the dentures?", Sims responded, "One of his assistants, I believe." Immediately following this testimony, after being shown a picture of Gremillion, the witness identified Gremillion as the assistant who delivered the dentures. In addition, Gremillion testified that she performed a wax try-in on Sims on July 8, 1985. Her testimony was corroborated by the lab slip which was signed "Dr. W.D. AllenBrenda." Dr. Allen always signed, W.D. Allen, D.D.S.
We affirm this charge.
CHARGE 2, SPECIFICATION 9:
Gremillion testified that she delivered dentures to Mary Veazy on July 9, 1985. This testimony was corroborated by Veazy's testimony as well as a note in Veazy's patient record that on that date she requested to see Dr. Allen to discuss a $75.00 delivery charge. This note suggests and serves to corroborate Gremillion's testimony that Dr. Allen did not see Veazy on July 9, 1985.
We affirm this charge.
CHARGE 2, SPECIFICATIONS 10 AND 11:
Gremillion testified that on July 9, 1985, in addition to delivering dentures to Veazy, she delivered dentures to Frank Wells and repaired a flange for Gloria Jones without Dr. Allen being present. Gremillion's testimony was corroborated by Veazy's testimony that no one but Gremillion and Terry Marino were present on July 9, 1985 and she was specifically told that Dr. Allen was not in the office.
Dr. Allen asserts that the committee's findings as to specification 11 were erroneous because Gremillion denied that she performed a repair in Jones' mouth. The record discloses that Gremillion testified that she repaired a flange in Jones' mouth on July 9, 1985. It was her testimony as to a second repair on a different date that she did not perform the repair in the patient's mouth. However, even as to this second repair she testified that she always placed the denture back into the patient's mouth.
We affirm these charges.
CHARGE 2, SPECIFICATIONS 12, 13, 20, 22, 23, 25 & 26:
These specifications involve work performed by Brenda Gremillion in the mouths of Ida Phillips, Annice Booth, Willie *798 Vaughn, Mildred Harris, John Gates, Meita Gustefferson and Lori Ishman. Gremillion testified that she inserted Phillips' upper denture in the patient's mouth; repaired Booth's denture and then seated it in the patient's mouth; made, delivered and seated the dentures of Willie Vaughn; performed adjustments and repairs to the dentures of Mildred Harris in the patient's mouth; delivered and seated the dentures of John Gates, Meita Gustefferson and Lori Ishman. Of these seven specifications, three are not supported by or corroborated by evidence other than Gremillion's testimony. No patient chart was found on Annice Booth and no one other than Gremillion testified that she performed dental work on Booth. Willie Vaughn was only able to remember that Gremillion was present in the room the day he received his dentures. He could not remember if Dr. Allen was present or who delivered the dentures to him. Gremillion also testified that she delivered dentures into the mouth of Lori Ishman on July 24, 1985. However, there is no clear and convincing evidence on Ishman's chart to support Gremillion's testimony. We therefore reverse the Board's findings on these three specifications.
The remaining four specifications are corroborated by other evidence. The patient charts of Phillips, Harris, Gates and Gustefferson all show entries by Gremillion which corroborate her testimony.
CHARGE 1 SPECIFICATION 3:
Patricia Gill, mother of Tuesday Barrileaux, testified that Dee Chapman performed a bite rim on her daughter and an equilibration. When asked whether that work was done in her daughter's mouth, she stated, "Righton the teeth." Gill's testimony as to the work performed by Chapman is as follows:
On February 19, 1985, Chapman performed the first bite rim on Barrileaux and ground the denture (equilibration). On February 21, 1985, Chapman again ground the denture and again placed them back into Barrileaux's mouth. When Gill requested to see Dr. Allen, Chapman informed her that he was not going to see her. Chapman took the dentures into the lab and performed a realignment for which she attempted to charge an additional $130.00. On February 22, 1985, Barrileaux returned to the office to have another impression taken so that another set of teeth could be made. Once again Chapman ground the denture in an attempt to make it fit. Gill told her, "i'm not going to look at them like this. I am going to take her to another dentist."
Once informed by another dentist that the denture would not hold up, Gill returned to Dr. Allen's office and demanded another set of dentures be made. On February 28, 1985, Barrileaux again returned to have her bite checked. Chapman checked her bite. No checking was done by Dr. Allen. On March 1, 1985, Barrileaux was again checked by Chapman. On March 3, 1985, Chapman performed another check and took upper and lower impressions. On March 8, 1985, the lab technician placed the new dentures in Barrileaux's mouth to check for fit. Chapman was present. Dr. Allen was not present. One side of the denture was a little lower than the other. The lab technician stated that he could take care of the problem. On August 9, 1985, Barrileaux returned to pick up the denture. Chapman placed the denture in the patient's mouth. Dr. Allen was not present nor did he come in to check the fit.
We affirm this charge.
CHARGE 3 SPECIFICATIONS 3 & 4:
These specifications concern dental work performed by Barbara Reaux on Darlene Davis. Reaux testified that she placed an acrylic partial into the mouth of Davis and took a final upper impression on Davis with the acrylic partial still in place. She testified that all this work was done at the direction of Dr. Allen. Reaux's testimony was corroborated by Davis' testimony which was essentially the same.
We affirm this charge.
CHARGE 4 SPECIFICATION 3:
Sharon Forbes testified that she took wax try-ins, checked the occlusal bite of numerous patients, delivered, adjusted and repaired dentures, and delivered, adjusted *799 and repaired partials. She further testified that she performed these procedures at Dr. Allen's direction and with his knowledge and consent both in his presence and out of his presence.
We affirm this charge.
CHARGE 6 SPECIFICATION 1:
Edith McClendon testified that she placed an open face gold lateral on the upper of Gladys Myers without receiving a signed script from Dr. Allen. McClendon testified that instead of receiving her laboratory instructions on signed work orders, she received them on yellow "stickems" attached to the patient's chart in the handwriting of one of Dr. Allen's assistants. The Board's refusal to give any weight to the signed work order shown to McClendon during the hearing was correct as it was dated two days after she left Dr. Allen's employ.
We affirm this charge.
CHARGE 7 SPECIFICATION 1:
This charge involves misrepresentation or false promises made directly or indirectly to influence, persuade or induce dental patronage.
Sharon Forbes testified that she handled telephone inquiries from consumers responding to Dr. Allen's ads. The ads lead them to believe a full set of dentures was $125.00 when in fact, the price was $125.00 each for the upper and lower denture. In addition, the $250.00 price was for a set of economy dentures which had no festooning or shaping. If the patient wanted a denture that looked natural, the price ranged as high as $450.00. Forbes testified that many patient's complained about the ads being misleading. She brought this to Dr. Allen's attention but he refused to change the ads. Forbes testified that the employees were instructed by Dr. Allen to sell the higher priced dentures because the cost price was the same as for the cheaper set. Many patients came in for the $250.00 set and were persuaded to purchase the $450.00 set. The prices fluctuated with production. If production dropped, the price dropped. The employees were admonished that their jobs depended on producing $3,000 per day. They were told by Dr. Allen that "If you can't make $3,000 per day, I'll find somebody that can." They were instructed to do "whatever it takes" to make production.
We affirm this charge.
For the foregoing reasons we reverse the trial court judgment as to Specifications 13, 20 and 26 of Charge 2, and reduce the fine to $16,500.00. In all other respects the trial court judgment is affirmed.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] Charge One pertained to work done by Dee Chapman; Charge Two to work done by Brenda Gremillion; Charge Three to work done by Barbara Reaux Spencer; and Charge Four to work done by M.J. Harris, Terry Marino and Sharon Forbes.
[2] On February 27, 1987, Judge Livaudais abstained from hearing the federal suit pending completion of the State proceedings. The abstention order was affirmed by the United States Fifth Circuit Court of Appeals. Allen v. Louisiana State Board of Dentistry, 835 F.2d 100 (5th Cir.1988.)
[3] The deterrent to this type of activity is found in the Louisiana Criminal Code.
[4] The pleading was proffered.
[5] In Mack, the prosecutor's involvement in the judicial aspects of the hearing were far reaching. He prepared the fact findings and conferred ex parte with the finder of fact prior to the rendering of the decision.
[6] Dr. Allen cites the following cases in support of his contention of adjudicatorial impropriety:

Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); Matter of Rollins Environmental Services, Inc., 481 So.2d 113 (La. 1985); Ott v. Board of Registration in Medicine, supra; Harris v. Board of Registration in Chiropody, supra,; Rogers v. Texas Optometry Board, 609 S.W.2d 248 (Tex.Cir.App.1980); Dayoub v. Commonwealth State Dental Council and Examining Board, 70 Pa.Cmwlth. 621, 453 A.2d 751 (1982). By contrast with the instant case, the above cases are distinguishable in that the questions and comments were hostile, confrontational, sarcastic and definitely reflected a biased state of mind. We find no evidence of a biased state of mind in the instant case.